**BROWN & CONNERY LLP**
William F. Cook, Esquire
Sean P. O'Brien, Esquire
360 Haddon Avenue
Westmont, New Jersey 08108
(856) 854-8900
*Attorneys for Defendants Township of Cherry Hill,*
*Charles Cahn, Frederick Kuhn, William Cattell,*
*William F. Cook, Esq., Brandon Hawkins, Esq.,*
*and Susan Shin Angulo*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **DENISE WILLIAMS,**<br><br>       **Plaintiff,**<br><br>v.<br><br>**TOWNSHIP OF CHERRY HILL; THE CAMDEN COUNTY CONSTRUCTION BOARD OF APPEALS; WILLIAM CATTELL; FREDERICK KUHN; WILLIAM F. COOK; BRANDON HAWKINS; CHARLES CAHN; YANUZZI GROUP, INC., SUSAN SHIN ANGULO, and ABC CORPS. 1-10**<br><br>       **Defendants.** | Removed from the<br>Superior Court of New Jersey, Law Division,<br>Civil Part<br>Camden County<br><br>CAM-L-769-19<br>CAM-L-183-22<br>CAM-L-2359-22<br>(Consolidated)<br><br><br>**NOTICE OF REMOVAL** |

**TO:**   Clerk of the Court
       United States District Court for the District of New Jersey
       Mitchell H. Cohen Building & U.S. Courthouse
       4th and Cooper Streets
       Camden, New Jersey 08101

**PLEASE TAKE NOTICE** that Defendants Township of Cherry Hill, Frederick Kuhn,

William Cattell, Charles Cahn, William F. Cook, Esquire, Brandon Hawkins, Esquire, and Susan

Shin Angulo (collectively, "Township Defendants"), by and through their undersigned counsel,

hereby remove this matter pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 from the Superior Court

of New Jersey, Law Division, Camden County (the "State Court") to the United States District Court for the District of New Jersey, Camden Vicinage.  In support of this Notice of Removal, Township Defendants respectfully state as follows:

## BACKGROUND

1.      On February 25, 2019, Plaintiff Denise Williams ("Plaintiff") commenced a lawsuit in the Superior Court of New Jersey, Law Division, Civil Part, Camden County by filing a Complaint ("Complaint") captioned as Williams v. Township of Cherry Hill, et al., Docket No. CAM-L-769-19 (the "State Court Action") (Exhibit 1).  The matter related Plaintiff's construction of a mansion at 1138 Winding Drive in Cherry Hill.  Only state law claims were alleged.

2.      On July 28, 2019, Plaintiff filed a First Amended Complaint in the State Court Action.  Only state law claims were alleged (Exhibit 2).

3.      On February 2, 2021, Plaintiff filed a Second Amended Complaint in the State Court Action (Exhibit 3).  Only state law claims were alleged.

4.      On June 3, 2021, Plaintiff filed a Third Amended Complaint in the State Court Action (Exhibit 4).  Only state law claims were alleged.

5.      On January 26, 2023, after her multiple court applications before state trial and appellate courts to stay demolition of the incomplete structure were denied, the incomplete structure at 1138 Winding Drive was demolished pursuant to the Township's clear statutory authority under the New Jersey Uniform Construction Code.

6.      On March 17, 2023, the Law Division granted Plaintiff leave to file a Fourth Amended Complaint (Exhibit  5).

7.    On March 21, 2023, Plaintiff filed a Fourth Amended Complaint.  Plaintiff alleged various federal claims for the first time (see Counts IX, XI, XII, and XX) (alleging, *inter alia*, claims under Section 1983, 1985, and 1988).

8.    Township Defendants accepted service of the Fourth Amended Complaint on March 21, 2023.

## BASIS FOR REMOVAL

9.    This Court has original jurisdiction over the above-captioned matter under the provisions of 28 U.S.C. § 1331 because Counts IX, XI, XII, and XX of the Fourth Amended Complaint arise from the laws of the United States.

10.    The pending action is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1331 and is one which may be removed to this Court by Township Defendants pursuant to the provisions of 28 U.S.C. § 1441, particularly sections 1441(a) and 1441(c).

11.    This Court has supplemental jurisdiction over the remaining Counts of the Fourth Amended Complaint under 28 U.S.C. § 1367 because they arise from the same case or controversy.

## REMOVAL IS TIMELY

12.    This Notice of Removal is being filed within thirty (30) days of March 21, 2023, the date on which the Fourth Amended Complaint was served.  Pursuant to Fed. R. Civ. P. 6(a) and 28 U.S.C. § 1446(b), this Notice of Removal is timely.  See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999).

3

## VENUE IS PROPER

13.     The United States District Court for the District of New Jersey is the federal judicial district embracing the State Court where Plaintiff originally filed this suit.  *See* 28 U.S.C. § 1441(a).

## STATE COURT NOTIFICATION AND NOTICE TO ALL COUNSEL OF RECORD

14.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on all counsel of record and will be filed with the State Court.

## MISCELLANEOUS

15.     No admission of fact, law, or liability is intended by this Notice of Removal and Township Defendants expressly reserves all defenses, affirmation of defenses, and motions.

16.     All Defendants named in this action consent to removal, including Township Defendants, the Camden County Construction Board of Appeals, and Yannuzzi Group.

**WHEREFORE,** Township Defendants, by and through its undersigned counsel, and through the filing of this Notice of Removal, serving of a copy of this Notice of Removal on all counsel of record, and filing of a copy of this Notice of Removal with the clerk of the State Court, effects the removal of said civil action to this Honorable Court.

Respectfully submitted,

**BROWN & CONNERY, LLP**
*Attorneys for Defendants*

Dated:  April 5, 2023          By:  s/ *William F. Cook*

William F. Cook, Esquire
Sean P. O'Brien, Esquire

4

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2023, the foregoing Notice of Removal was electronically filed with the United States District Court for the District of New Jersey via the CM/ECF system. I further certify that on April 5, 2023, the foregoing Notice of Removal was served on all counsel of record via e-mail, as follows:

Corinne McCann Trainor, Esq.
**FOX ROTHSCHILD LLP**
997 Lenox Drive
Lawrenceville, New Jersey 08648
ctrainor@foxrothschild.com
*Attorneys for Plaintiff*

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  April 5, 2023                    By: s/ *William F. Cook*
                                                    William F. Cook, Esquire

# EXHIBIT 1

# TAYLOR & BOGUSKI, LLC
## ATTORNEYS AT LAW

MICHAEL A. TAYLOR
mtaylor@taylorboguski.com
NJ Attorney ID: 003521976

LARCHMONT LAW & PROFESSIONAL CENTRE
199 SIXTH AVENUE
MOUNT LAUREL, NEW JERSEY 08054
PHONE: 856-234-2233 ● FAX: 856-234-0713
www.taylorboguski.com

GARY W. BOGUSKI
gboguski@taylorboguski.com
NJ Attorney ID: 025811977

February 25, 2019

Camden Superior Court
Hall of Justice
101 S. 5th Street
Camden, NJ 08103

**RE:    Denise Williams v Cherry Hill Township and the Camden County
Construction Board of Appeals**

Dear Sir/Madam:

Attached is our verified complaint in lieu of prerogative writ along with supporting documents. Please file accordingly.

Thank you for your kind attention.

Very truly yours,
TAYLOR & BOGUSKI, LLC

BY: GARY W. BOGUSKI

GWB/br
enc.
cc:    Township of Cherry Hill
Camden County Construction Board of Appeals
Denise Williams

Gary W. Boguski, Esquire ID # 025811977
Larchmont Law & Professional Center
199 Sixth Avenue
Mt. Laurel, NJ  08054
856.234.2233
Attorney for Plaintiff, Denise Williams

| | | |
|---|---|---|
| Denise Williams | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION |
| Plaintiff | : | CAMDEN  COUNTY |
| | : | |
| v. | : | DOCKET NO. |
| | : | CIVIL ACTION |
| Township of Cherry Hill and the Camden | : | |
| County Construction Board of Appeals | : | **VERIFIED COMPLAINT IN LIEU OF** |
| Defendants | : | **PREROGATIVE WRIT** |
| | : | |

Plaintiff, Denise Williams, through her undersigned attorney, by way of Verified Complaint against the defendants, the Township of Cherry Hill and the Camden County Construction Board of Appeals alleges:

## NATURE OF THE ACTION

1.    This is an action in lieu of prerogative writ, pursuant to New Jersey Court Rule 4:69, seeking to strike portions of the decision of the Camden County Construction Board of Appeals dated November 15, 2018. The Board found against the Township of Cherry Hill and in favor of plaintiff with respect to the Township's allegation that the plaintiff's structure located at 1138 Winding Drive, Cherry Hill, NJ 08003, was unsafe. The Board found that the building was safe. The Board then ordered plaintiff to conduct an assessment of the extent of any water damage and deterioration of the wooden structural members to be completed within sixty days.  Plaintiff herein seeks to strike the decision of the Board with respect to the above requirement since that requirement by the Board was overbroad, arbitrary, capricious  and unreasonable and in violation of State and Federal law.

## THE PARTIES

2.    Plaintiff, Denise Williams, is an individual residing in Cherry Hill, New Jersey.

3     Defendant, Township of Cherry Hill, is a city/municipality in the County of Camden, State of New Jersey.

4.    Defendant, Camden County Construction Board of Appeals, is a government entity created under N.J.S.A. 52:27D-126 and N.J.A.C. 5:23A.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the action because Plaintiff, Denise Williams, is the owner of property located in the Township of Cherry Hill, County of Camden, State of New Jersey.

6.    Venue is properly laid, pursuant to New Jersey Court Rule 4:3-2(a), in Camden County, because the property in question owned by plaintiff is located in Camden County, Township of Cherry Hill, State of New Jersey.

## FACTUAL ALLEGATIONS

7.    Plaintiff is the owner of a building located at 1138 Winding Drive, Cherry Hill, NJ 08003.

8.    In or about June 2018, plaintiff was served with a notice of violation for an unsafe structure by defendant, Township of Cherry Hill.

9.    Plaintiff filed a timely appeal to the Construction Board of Camden County.

10.   On November 7, 2018, the Camden County Construction Board of Appeals held a hearing with respect to the alleged violation of an unsafe structure. Testimony was taken from William Cattell, Construction Code Official for the Township of Cherry Hill, and Lawrence Brooks, Sr., P.S. a New Jersey licensed professional engineer. Mr. Brooks speculated that the property was free of mold and that the structure was safe. Mr. Cattell testified that there may be areas in which the integrity of the structure was compromised.

11.   No testimony was presented that indicated that the structure actually had any significant moisture levels or mold present, nor that any of the wooden elements of the structure were compromised.

12.   Despite finding that the structure as safe, and without any evidence that the property had moisture, mold or structural problems, the Board then ordered plaintiff to conduct further tests to determine the extent of water damage and deterioration of the structural wood members.

13.   Additionally, despite the fact that the only violation that was appealed by plaintiff to the Board was the violation of alleged unsafe structure, the Board then considered and ruled on a separate issue not before it, specifically the allegation that work had been done on the structure without a permit.

14.   Plaintiff did not present evidence or otherwise address the allegation of working without a permit issue since that issue was not part of plaintiff's appeal.

## COUNT ONE
## Arbitrary Capricious and Unreasonable

15.   Plaintiff was faced with a notice of violation from defendant, Township of Cherry Hill, alleging unsafe structure. It was from that notice that plaintiff appealed.

16.   Testimony was taken at the hearing before the Camden County Construction Board of Appeals with respect to whether or not plaintiff's structure was unsafe.

17.   The Camden County Construction Board of Appeals found that the building was safe.

18.   Despite finding that the building was safe and without any basis or explanation, the Board then required as part of its decision that plaintiff conduct additional tests to determine whether the structure was safe.

19.   The Board also considered and entered an Order with respect to an allegation of work being done without a permit despite the fact that that issue was not before the Board.

**WHEREFORE**, plaintiff demands judgment against defendants:
a.   Seeking a Court Order enjoining the defendants from taking further action against plaintiff
b.   Reversing the decision of the Construction Board of Appeals requiring additional tests on the structure.
c.   For reasonable costs and counsel fees
d.   For such other relief as the Court should deem equitable.

## COUNT TWO
## Tortious Interference

20.   Plaintiff herein repeats each of the allegations in paragraphs 1 through19, as if fully set forth herein.

21.   Plaintiff has a reasonable right of expectation to be able to complete the construction of her home at 1138 Winding Drive, Cherry Hill, NJ 08003

22.   Through their actions, the defendants have intentionally and maliciously interfered with plaintiff's attempt to complete the construction of her home.

23.   As a result of defendants actions, plaintiff has been damaged by delays in the completion of her home, and by requiring the hiring of an expert, the hiring of an attorney and the need to expend much time and effort in defending herself against the capricious and unreasonable actions of the defendants.

**WHEREFORE**, plaintiff demands judgment in her favor and against defendants seeking a Court Order reversing the decision of the Camden County Board of Appeals with respect to the Order requiring further tests on the structure and awarding compensatory and punitive damages, together with reasonable costs, counsel fees and any other relief deemed equitable and just by the Court.

## DESIGNATION OF TRIAL COUNSEL

TAKE NOTICE that Gary W. Boguski, Esquire is hereby designated as trial counsel in the above captioned litigation pursuant to R. 4:5-1.

## R.4:5-1 CERTIFICATION

The matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding, and no other action or arbitrations proceeding is contemplated, except as follows:   **NONE**

There are no other know parties who should be joined in this action.

_____
Gary W. Boguski, Esquire

DATED: February 25, 2019

**Appendix XII-B1**



| **CIVIL CASE INFORMATION STATEMENT** (CIS) Use for initial Law Division Civil Part pleadings (not motions) under *Rule* 4:5-1 **Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed** | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|
| | PAYMENT TYPE:  ☐CK ☐CG ☐CA |
| | CHG/CK NO. |
| | AMOUNT: |
| | OVERPAYMENT: |
| | BATCH NUMBER: |

| ATTORNEY / PRO SE NAME Gary W. Boguski, Esquire | TELEPHONE NUMBER (856) 234-2233 | COUNTY OF VENUE Camden |
|---|---|---|
| FIRM NAME (if applicable) Taylor & Boguski, LLC | | DOCKET NUMBER (when available) |
| OFFICE ADDRESS 199 Sixth Avenue Mt. Laurel, NJ 08054 | | DOCUMENT TYPE complaint |
| | | JURY DEMAND  ■ YES  ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff) Denise Williams | CAPTION Denise Williams v Township of Cherry Hill and the Camden County Construction Board of Appeals |
|---|---|

| CASE TYPE NUMBER (See reverse side for listing) 701 | HURRICANE SANDY RELATED? ☐ YES  ■ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ■ NO IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING? ☐ YES  ☐ No | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ YES  ■ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)  ☐ NONE  ☐ UNKNOWN |

| **THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.** |
|---|
| CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION |

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☐ YES  ■ No | IF YES, IS THAT RELATIONSHIP: ☐ EMPLOYER/EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain) ☐ FAMILIAL  ☐ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☐ YES  ☐ No |
|---|

| USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION |
|---|
| |

| ♿ | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ YES  ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED? ☐ YES  ■ No | IF YES, FOR WHAT LANGUAGE? |

| **I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).** |
|---|
| ATTORNEY SIGNATURE: *Gary W Boguski* |

**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I  -  150 days' discovery**

| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (including declaratory judgment actions) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM (coverage issues only) |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (summary action) |
| 999 | OTHER (briefly describe nature of action) |

**Track II  -  300 days' discovery**

| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603N | AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold) |
| 603Y | AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold) |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE – PROPERTY DAMAGE |
| 621 | UM or UIM CLAIM (includes bodily injury) |
| 699 | TORT – OTHER |

**Track III  -  450 days' discovery**

| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

**Track IV  -  Active Case Management by Individual Judge / 450 days' discovery**

| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 620 | FALSE CLAIMS ACT |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

**Multicounty Litigation (Track IV)**

| | | | |
|---|---|---|---|
| 271 | ACCUTANE/ISOTRETINOIN | 292 | PELVIC MESH/BARD |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 282 | FOSAMAX | 296 | STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 286 | LEVAQUIN | 299 | OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR |
| 287 | YAZ/YASMIN/OCELLA | 300 | TALC-BASED BODY POWDERS |
| 289 | REGLAN | 601 | ASBESTOS |
| 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION | 623 | PROPECIA |
| 291 | PELVIC MESH/GYNECARE | 624 | STRYKER LFIT CoCr V40 FEMORAL HEADS |

**If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.**

**Please check off each applicable category**    ☐ **Putative Class Action**    ☐ **Title 59**

Gary W. Boguski, Esquire ID # 025811977
Larchmont Law & Professional Center
199 Sixth Avenue
Mt. Laurel, NJ  08054
856.234.2233
Attorney for Plaintiff, Denise Williams

| | |
|---|---|
| Denise Williams | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION |
| Plaintiff | : CAMDEN  COUNTY |
| | : |
| v. | : DOCKET NO. |
| | : CIVIL ACTION |
| Township of Cherry Hill and the Camden | : |
| County Construction Board of Appeals | : |
| Defendants | : **PROOF OF MAILING** |
| | : |

I, Bonnie Rosner, of full age, hereby certify that:

1.    I am a legal assistant employed with the Law Offices of Taylor & Boguski, LLC

2.    On February 25, 2019, we filed the Verified Complaint in lieu of prerogative writ with supporting documents to the following:

**ELECTRONICALLY FILED**
Camden County Superior Court
Hall of Justice
101 S. 5th Street
Camden, NJ 08103

**REGULAR MAIL**
Camden County Court of Appeals
Construction Board of Appeals - Courthouse, 14th Floor
520 Market Street, 14th Floor
Camden, NJ 08102

**REGULAR MAIL**
Cherry Hill Township
820 Mercer Street
Cherry Hill, NJ 08002

## COURTESY COPY

**VIA FACSIMILE @ 856.488.7893**
**ATTN: Brandon Hawkins, Associate Township Solicitor**
Cherry Hill Township
820 Mercer Street
Cherry Hill, NJ 08002

I certify that the above statements made by me are true to the best of my knowledge and belief. I am aware that is any of the foregoing statements made by me are wilfully false, I am subject to punishment.

BONNIE ROSNER
Legal Assistant to Gary W. Boguski

# Civil Case Information Statement

## Case Details: CAMDEN | Civil Part Docket# L-000769-19

**Case Caption:** WILLIAMS DENISE  VS CHERRY HILL TOWNSHIP

**Case Initiation Date:** 02/25/2019

**Attorney Name:** GARY W BOGUSKI

**Firm Name:** TAYLOR & BOGUSKI, LLC

**Address:** 199 6TH AVE

MT. LAUREL NJ 08054

**Phone:**

**Name of Party:** PLAINTIFF : Williams, Denise

**Name of Defendant's Primary Insurance Company**

(if known): None

**Case Type:** ACTIONS IN LIEU OF PREROGATIVE WRITS

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Hurricane Sandy related?** NO

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
> **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
> **If yes, for what language:**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

02/25/2019

Dated

/s/ GARY W BOGUSKI

Signed

# EXHIBIT 2

Gary W. Boguski, Esquire ID # 025811977
gboguski@taylorboguski.com
Larchmont Law & Professional Center
199 Sixth Avenue
Mt. Laurel, NJ  08054
856.234.2233
Attorney for Plaintiff, Denise Williams

| | | |
|---|---|---|
| Denise Williams | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION |
| Plaintiff | : | CAMDEN  COUNTY |
| | : | |
| v. | : | DOCKET NO. CAM-L-769-19 |
| | : | CIVIL ACTION |
| Township of Cherry Hill and the Camden | : | |
| County Construction Board of Appeals | : | **PLAINTIFF'S FIRST AMENDED** |
| | : | **VERIFIED COMPLAINT IN LIEU OF** |
| Defendants | : | **PREROGATIVE WRIT** |
| | : | |

Plaintiff, Denise Williams, through her undersigned attorney, by way of Amended Verified Complaint against the defendants, the Township of Cherry Hill and the Camden County Construction Board of Appeals alleges:

## <u>COUNT ONE v CAMDEN COUNT CONSTRUCTION BOARD OF APPEALS</u>
### <u>Arbitrary Capricious and Unreasonable</u>

### <u>NATURE OF THE ACTION</u>

This is an action in lieu of prerogative writ, pursuant to New Jersey Court Rule 4:69, seeking to strike portions of the decision of the Camden County Construction Board of Appeals dated November 15, 2018. The Board found against the Township of Cherry Hill and in favor of plaintiff with respect to the Township's allegation that the plaintiff's structure located at 1138 Winding Drive, Cherry Hill, NJ 08003, was unsafe. The Board found that the building was safe. The Board then ordered plaintiff to conduct an assessment of the extent of any water damage and deterioration of the wooden structural members to be completed within sixty days.  Plaintiff herein seeks to strike the decision of the Board with respect to the above requirement since that requirement by the Board was overbroad, arbitrary, capricious  and unreasonable and in violation of State and Federal law. Plaintiff also objects to the Board considering whether plaintiff performed work on her home without a permit.

Page 1

## THE PARTIES

1. Plaintiff, Denise Williams, an African American, United States Citizen, and the owner of property located at 1138 Winding Drive in Cherry Hill, New Jersey.

2. Defendant, Camden County Construction Board of Appeals, is a government entity created under N.J.S.A. 52:27D-126 and N.J.A.C. 5:23A.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the action because Plaintiff, Denise Williams, is the owner of property located in the Township of Cherry Hill, County of Camden, State of New Jersey.

4. Venue is properly laid, pursuant to New Jersey Court Rule 4:3-2(a), in Camden County, because the property in question owned by plaintiff is located in Camden County, Township of Cherry Hill, State of New Jersey.

## FACTS

5. Plaintiff is the owner of a building located at 1138 Winding Drive, Cherry Hill, NJ 08003.

6. In or about June 2018, plaintiff was served with a notice of violation for an unsafe structure by defendant, Township of Cherry Hill.

7. Plaintiff filed a timely appeal to the Construction Board of Camden County.

8. On November 7, 2018, the Camden County Construction Board of Appeals held a hearing with respect to the alleged violation of an unsafe structure. Testimony was taken from William Cattell, Construction Code Official for the Township of Cherry Hill, and Lawrence Brooks, Sr., P.S. a New Jersey licensed professional structural engineer. Mr. Brooks states that the property was free of mold and that the structure was safe. Mr. Cattell testified that there may be areas in which the integrity of the structure was compromised, which supposition he based solely on the coloration of certain areas of wood in the interior of the building.

9. No testimony was presented that indicated that the structure actually had any significant moisture levels or mold present, nor that any of the wooden elements of the structure were compromised.

10. Despite finding that the structure as safe, and without any evidence that the property had moisture, mold or structural problems, the Board then ordered plaintiff to conduct further tests by a certified engineer at great expense to plaintiff to evaluate the integrity of the wooden structures in the building.

11.     Additionally, despite the fact that the only violation that was appealed by plaintiff to the Board was the violation of alleged unsafe structure, the Board then considered and ruled on a separate issue not before it, specifically the allegation that work had been done on the structure without a permit.

12.     Plaintiff did not present evidence or otherwise address the allegation of working without a permit issue since that issue was not part of plaintiff's appeal. Furthermore, the defendant did not present any evidence regarding the allegation of working without a permit.

13.     The decision of the Board in requiring plaintiff to have the building tested, after specifically finding that the building was not unsafe, and without any basis for requiring plaintiff to incur the cost of additional testing, was arbitrary, capricious and unreasonable.

14.     The action of the Board in considering whether plaintiff had been doing work on her home without a permit, which was not on the docket, and without notice to plaintiff of its intention to consider that issue, violated plaintiff's right to due process and was arbitrary, capricious and unreasonable.

WHEREFORE, plaintiff demands judgment against defendants:
a.      Seeking a Court Order enjoining the defendants from taking further action against plaintiff
b.      Reversing the decision of the Construction Board of Appeals requiring additional tests on the structure.
c.      For reasonable costs and counsel fees
d.      For such other relief as the Court should deem equitable.

## COUNTS TWO THROUGH FOUR v CHERRY HILL TOWNSHIP

## NATURE OF THE ACTION - COUNTS TWO TO FOUR

These counts constitute an action whereby plaintiff alleges that defendant, Cherry Hill Township, through its employees, officials, agents and assigns, has committed a long history of repeated egregious acts of tortious interference and abuse directed at plaintiff, preventing her from the completion of the construction of her home at 1138 Winding Drive, Cherry Hill, New Jersey. Plaintiff asserts that her civil and constitutional rights have been violated and denied by the actions and inactions as aforesaid and that she has been deprived of her substantive due process and equal protection under the law. The actions of the defendant have caused substantial harm, financial damages and other damages to plaintiff.

## THE PARTIES

15.     Plaintiff, Denise Williams, an African American, United States Citizen, and the owner of property located at 1138 Winding Drive in Cherry Hill, New Jersey

16. Defendant, Township of Cherry Hill, is a Municipality in the County of Camden, State of New Jersey.

## FACTS

17. Plaintiff purchased the aforesaid property in or about 2005 and in 2008 applied for and ultimately received a building permit for an approximately 18,000 square foot home. The permit was issued in 2009.

18. After the permit was issued, plaintiff diligently attempted to satisfy the defendant's construction officials for the purpose of constructing her home.

19. Despite the plaintiff's best efforts to satisfy the defendant's officials and to have her home built, plaintiff was faced with the repeated actions of defendant's desire to interfere with completion of her home.

20. Substantive work was done on plaintiff's home since 2009.

21. To date, plaintiff has expended over $1,000.000.00 for the purchase this property, excavation, architecture and engineering fees, construction costs and other costs.

22. As of the filing of this Amended Verified Complaint, the structure at 1138 Winding Drive has a fully formed concrete basement, framed exterior, sub flooring throughout the structure and a complete roof.

23. At present this structure is completely wrapped in tyvek to prevent the elements from damaging the property.

24. In or about July 2017, plaintiff engaged in multiple meetings and conversations with the Cherry Hill Construction Official for the purpose of submitting an application to renew the building permit.

25. By November 2017, plaintiff has submitted a complete application for the renewal of the building permit.

26. Thereafter, defendant issued a building permit for the exterior of the building only.

27. The application that was submitted in or about November 2017 came after approximately four months of discussions between plaintiff and the defendants construction official and in December 2017 was deemed by the construction official to be complete.

28. Throughout 2018, the defendant failed to issue a construction permit for the remainder of the home despite repeated requests by plaintiff. During this time, defendant's construction official provided vague, unfounded and confusing reasons for the non-issuance of the building permit.

29.     In December 2018 despite having supplied the defendant with a complete renewal application for the building permit in 2017, at the direction of Municipal Court Judge Charles Shimberg, and the Camden County Construction Board of Appeals, plaintiff submitted additional information to comply with the request by the construction official.

30.     To date, the defendant has not renewed the plaintiff's building permit.

31.     During the first six months of 2019, the defendant's official has continued to provide vague, unfounded, contradictory and confusing reasons for the non-issuance of the building permit.

32.     In 2017, 2018 and continuing in 2019, plaintiff directly and through her contractor, as well as her licensed engineer, has attempted to satisfy the defendants with respect to the alleged deficiencies in the permit application.

33.     During the pendency of the renewal permit process plaintiff has not performed any construction work on her home. The only work that has been done during that time was maintenance work as permitted under the Uniform Construction Code.

34.     Plaintiff has a reasonable right of expectation to complete the construction of her home, has ever intention to complete the project and is otherwise able to do so but for the actions of the defendant.

35.     Through their actions, the defendants have intentionally and maliciously interfered with plaintiff's attempt to complete the construction of her home.

36.     The plaintiff's original construction permit having expired, plaintiff has made diligent efforts directly, and through her contractor, to satisfy the requirements of the defendant's officials for the issuance of a renewal building permit.

37.     The defendant through its construction official and other employees, has interfered with and thwarted the plaintiff in her attempt to obtain a permit.

38.     Despite refusing to issue a new construction permit and despite plaintiff's efforts to complete that process, defendants have through multiple legal filings charged plaintiff for not having a permit.

39.     The actions of the defendant constituting harassment, intimidation, tortious interference, denial of plaintiff's civil rights and denial of plaintiff's constitutional rights have been egregious, pervasive, numerous and have taken place over the years that plaintiff has owned this property and has been attempting to have her home built. Those actions of the defendant include, but are not limited to the repeated filing of unfounded and frivolous legal proceedings against plaintiff for the sole purpose of intimidating, harassing interfering with and discriminating against plaintiff, which has caused substantial economic and other damages to

plaintiff and to avoid the issuance of a building permit which would allow plaintiff to complete her home.

40. On or about June 17, 2019, the defendant filed an Order to Show Cause Summary Action and a Verified Complaint against plaintiff seeking, among other relief, the demolition of plaintiff's partially constructed home on the basis that the structure is unsafe and because there is not a current construction permit. Defendant filed that action without any expert report or opinion, or any other basis, for the allegation that the structure was unsafe in any way. Defendant filed that pleading also with the knowledge that plaintiff is aggressively pursuing the requisite permit.

41. In or about January 2019, defendant issued a notice of violation alleging that plaintiff was causing work to be done without a current permit. This alleged violation has been appealed to the Camden County Construction Board of Appeals, however, the notice was issued without any basis inasmuch as plaintiff is not working and has not worked on her property since the expiration of the original permit except as maintenance as permitted under the Uniform Construction Code.

42. Defendant filed an earlier notice of violation in July 2018 alleging that the plaintiff's property was unsafe, again without any scientific, expert or other basis for that allegation.

43. The defendant's July 2018 notice of violation for an unsafe structure was appealed to and heard by the Camden County Construction Board of Appeals which, after testimony from plaintiff's expert, found that the building was not unsafe. At the hearing before the Camden County Construction Board of Appeals the defendant produced no evidence that the property was unsafe. The only evidence produced by defendant at that hearing was a number of inconclusive photographs and the testimony of defendant's Construction Official who admitted that it was his supposition that mold was present in the structure. That assertion was untrue and no proof was presented of the existence of mold or any damage to the structure.

44. Despite the property be found to be safe by Camden County Construction Board of Appeals, and having to be safe by certified licensed architects, the defendant has continued to post unsafe structure signs on plaintiff's property.

45. In or about April 2017, defendant issued a notice of violation for failure to renew permit. Defendant permitted that notice of violation to proceed to a Municipal Court complaint and trial which took place in 2018. Defendant proceeded with that notice of violation despite the knowledge that plaintiff had been actively seeking to renew the permit and had been in nearly constant communication with defendant's construction official beginning in late April 2017, culminating in the construction official's admission in December 2017 that the permit application submitted by plaintiff was at that point complete.

46. Defendant has filed these legal proceedings for the sole purpose of harassing, intimidating and interfering with plaintiff's attempt to complete the construction of her home in violation of plaintiff's civil and constitutional rights.

47. In addition to the filing of multiple unfounded and baseless legal proceedings against plaintiff, defendant, through its employees, agents and assigns that engaged in conduct designed to further intimidate, harass and discriminate against plaintiff.

48. The Mayor of Cherry Hill Township, Charles Cahn, who resides directly across the street from plaintiff's property, has on multiple occasions, approached individuals working at plaintiff's property to advise them, untruthfully, that plaintiff does not pay her contractors and made other such disparaging comments about plaintiff which were designed to discourage the contractors from continuing to work for plaintiff.

49. In addition to making these comments himself, the Mayor has also encouraged Cherry Hill Township Police Officers as well as other individuals, including a neighbor on Barbara Drive, to "warn" plaintiff's contractors about her alleged financial inability to pay.

50. The multiple comments to plaintiff's contractors were untrue and resulted in a disruption of the work being done by the contractors on plaintiff's home including causing multiple contractors, who, as a result of those comments, left the job unfinished despite being under contract with plaintiff.

51. The egregious actions by and at the direction of the Mayor have resulted in substantial delay in the work on plaintiff's home and has made it difficult for plaintiff to retain contractors and to hire new contractors.

52. On diverse dates from 2014 through and including 2019, the defendant through its employees, official's, agents and assigns, has caused various individuals and companies to travel to plaintiff's property and to engage plaintiff and her contractors in ways so as to sow discord with other property owners on Winding Drive and with plaintiff's contractors. This includes multiple visits from Cherry Hill police, construction code and other officials of defendant, defendant's Township vehicles and demolition crews which were directed to plaintiff's property for the sole purpose of harassing, intimidating, bullying and interfering with plaintiff in her attempts to complete the construction of her home.

53. As a result of the harassing and gregarious conduct of the Mayor and other of the defendant's officials, the plaintiff has been subjected to repeated acts of vandalism, profanity and racial epitaph on plaintiff's mailbox and on plaintiff's property.

54. On diverse dates employees and officials of Cherry Hill Township contacted plaintiff's mortgage company and provided incomplete and untruthful information

to the mortgage company regarding alleged violations being asserted against plaintiff and other "concerns" that the Township had with respect to plaintiff. The purpose of these communications was to interfere with plaintiff's relationship with her mortgage company and to prevent her from obtaining the funding necessary to complete the construction of her home.

55.   During the construction of plaintiff's home the defendant's communications director issued a press release indicating that the well known professional singer, Deniece Williams, was the owner of the property on Winding Drive. This created a media circus. This press release was issued with the knowledge that plaintiff was not that individual. The media's attention expanded to claim that the house was abandoned and in complete disrepair. The resulting commotion interfered with work being done by plaintiff's contractors and caused a delay in the work being done at plaintiff's home.

56.   Despite having submitted two complete applications for a renewal of permit plaintiff is still not in possession of the permit other than the limited permit issued in or about December 2017 for the exterior of her home. In response to the submission of those sets of applications, the defendant has at times delayed responding to those applications or questions raised by plaintiff and her contractor regarding the application process. Plaintiff has also received contradictory, inaccurate, vague and confusing responses from defendant's construction official having to do with the alleged deficiencies in those applications.

57.   In July 2018 and on two occasions in September 2018, the defendant's construction official, without notice to defendant or her counsel, sought and received warrants to enter defendant's building. In both instances these warrants were based upon incomplete and insufficient information.

58.   In addition to the three warranted entries into plaintiff's property, defendant's construction official has without a warrant and without notice to plaintiff, on multiple occasions, illegally entered plaintiff's property. These illegal entries were admitted to plaintiff by the construction official ostensibly for the purpose of determining whether there were any unsafe aspects to plaintiff's property.

59.   In or about 2014, defendant drastically increased plaintiff's real estate taxes disparatively with other properties in that area which were completed and occupied homes even though plaintiff's property was far from completed and unoccupied.

60.   Shortly after illegally and inappropriately raising the real estate taxes on plaintiff's property in or about 2014, without plaintiff filing a formal appeal, defendant did significantly reduce the property taxes.

61.   It is clear that the Township is doing everything possible to avoid the issuance of a building permit to plaintiff and to prevent plaintiff from completing and moving into her home on Winding Drive.

62. On November 28, 2018, plaintiff filed a Tort Claims notice against defendant. Since the filing of the Tort Claims Notice defendant has continued to violate plaintiff's civil and constitutional rights, has discriminated against plaintiff and tortuously interfered with her ability to complete the construction of her home.

## COUNT TWO
## Tortious Interference

63. Plaintiff herein repeats each of the allegations in paragraphs 1 through 57, as if fully set forth herein.

64. Plaintiff has a reasonable right of expectation to be able to complete the construction of her home at 1138 Winding Drive, Cherry Hill, NJ 08003

65. Through their actions, the defendants have intentionally and maliciously interfered with plaintiff's attempt to complete the construction of her home.

66. As a result of defendants actions, plaintiff has been damaged by being prevented in the completion of her home, and by requiring plaintiff to expend substantial sums to hire multiple experts, requiring the plaintiff hiring of an attorney and the need to expend much time and effort in defending herself against the capricious and unreasonable actions of the defendants.

67. As a result of defendant's actions, plaintiff has not been issued a new construction permit and has been prevented from completing the construction of her home.

    **WHEREFORE**, plaintiff demands judgment against defendants:
    a.  For monetary damages
    b.  Requiring defendant to issue a building permit to plaintiff
    c.  Enjoining defendant from engaging in any future actions designed to unreasonably delay plaintiff's completion of her home
    d.  For reasonable costs and counsel fees
    e.  For such other relief as the Court should deem equitable

## COUNT THREE

## New Jersey Civil Rights Action 10:6-2( c)

68. Plaintiff herein repeats each of the allegations in paragraphs 1 through 62, as if fully set forth herein.

69. The actions of defendant, through its employees, officials, agents and assigns, acting under color of law, have through intimidation, harassment, threats and coercion, deprived plaintiff of her substantive due process and equal protection rights.

70.     As a result of having been deprived of her substantive due process and equal protection rights, plaintiff has suffered damages including being delayed in the completion of her home, requiring plaintiff to expend substantial sums to hire multiple experts and attorneys to defend against the intimidating and frivolous legal proceedings filed by defendant, and the need to expend much time and effort defending herself against the capricious and unreasonable actions of the defendant, and other damages.

**WHEREFORE**, plaintiff demands judgment against defendants:
a.     For monetary damages
b.     Requiring defendant to issue a building permit to plaintiff
c.     Enjoining defendant from engaging in any future actions designed to unreasonably delay plaintiff's completion of her home
d.     For reasonable costs and counsel fees
e.     For such other relief as the Court should deem equitable

## COUNT FOUR

### New Jersey Constitution Article One, Paragraph One and Five

71.     Plaintiff herein repeats each of the allegations in paragraphs 1 through 65, as if fully set forth herein.

72.     Article 1, Paragraph 1 of the New Jersey Constitution guarantees all persons certain rights including the right to acquire, possess and protect property and the pursuit of safety and happiness.

73.     Article 1, Paragraph 5 of the New Jersey Constitution ensures that no person shall be denied the enjoyment of any civil right, nor be discriminated against in the exercise of any civil right because of religious principals, race, color, ancestry or national origin.

74.     Defendant has denied plaintiff's application for a building permit and denied her the ability to complete and move into her home and otherwise has been discriminated against, on the basis of her race and color as an African American individual.

75.     As a result of having been discriminated against on the basis of her race and color, plaintiff has suffered damages including being delayed in the completion of her home, having been require to hire multiple experts and attorneys to defend against the intimidating and frivolous legal proceedings filed by defendant, and the need to expend much time and effort defending herself against the capricious and unreasonable actions of the defendant, and other damages.

**WHEREFORE**, plaintiff demands judgment against defendants:

a.      For monetary damages

b.      Requiring defendant to issue a building permit to plaintiff

c.      Enjoining defendant from engaging in any future actions designed to unreasonably delay plaintiff's completion of her home

d.      For reasonable costs and counsel fees

e.      For such other relief as the Court should deem equitable

## DESIGNATION OF TRIAL COUNSEL

TAKE NOTICE that Gary W. Boguski, Esquire is hereby designated as trial counsel in the above captioned litigation pursuant to R. 4:5-1.

## R.4:5-1 CERTIFICATION

The matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding, and no other action or arbitrations proceeding is contemplated, except as follows:

Township of Cherry Hill v Denise Williams
Docket No.: CAM-L-2436-19

There are no other know parties who should be joined in this action.

Gary W. Boguski /s/

Gary W. Boguski, Esquire

DATED:      July 28, 2019

Page 11

# TAYLOR & BOGUSKI, LLC
## ATTORNEYS AT LAW

<table>
<tr><td>MICHAEL A. TAYLOR<br>mtaylor@taylorboguski.com<br>NJ Attorney ID: 003521976</td><td>LARCHMONT LAW & PROFESSIONAL CENTRE<br>1 99 SIXTH AVENUE<br>MOUNT LAUREL, NEW JERSEY 08054<br>PHONE:  856-234-2233  ●  FAX:  856-234-0713<br>www.taylorboguski.com</td><td>GARY W. BOGUSKI<br>gb oguski@taylorboguski.com<br>NJ Attorney ID: 025811977</td></tr>
</table>

July 29, 2019

Camden Superior Court
Hall of Justice
101 S. 5th Street
Camden, NJ 08103

**RE:   Denise Williams v Cherry Hill Township and the Camden County
Construction Board of Appeals
Docket No.: CAM-L-769-19**

Dear Sir/Madam:

Attached is the First Amended Verified Complaint in lieu of prerogative writ along with supporting documents. Please file accordingly.

Thank you for your kind attention.

Very truly yours,
TAYLOR & BOGUSKI, LLC

Gary W. Boguski /s/

BY: GARY W. BOGUSKI

GWB/br
attachment
cc:   Honorable Michael J. Kassel, J.S.C.   Courtesy Copy
   Matthew V. White, Esquire matthew.white@camdencounty.com
      Camden County Construction Board of Appeals
   Robert N. Wright, Jr., Township Solicitor     rwight@chtownship.com
   Brandon Hawkins, Deputy Township Solicitor    bhawkins@chtownship.com
   Denise Williams   email

Gary W. Boguski, Esquire ID # 025811977
Larchmont Law & Professional Center
199 Sixth Avenue
Mt. Laurel, NJ  08054
856.234.2233
Attorney for Plaintiff, Denise Williams

| | | |
|---|---|---|
| Denise Williams | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION |
| Plaintiff | : | CAMDEN  COUNTY |
| | : | |
| v. | : | DOCKET NO.  Docket No.: CAM-L-769-19 |
| | : | CIVIL ACTION |
| Township of Cherry Hill and the Camden | : | |
| County Construction Board of Appeals | : | |
| Defendants | : | **PROOF OF MAILING** |
| | : | |

I, Bonnie Rosner, of full age, hereby certify that:

1.    I am a legal assistant employed with the Law Offices of Taylor & Boguski, LLC

2.    On July 28, 2019, we filed the First Amended Verified Complaint in lieu of prerogative writ with supporting documents to the following:

**ELECTRONICALLY FILED**
Camden County Superior Court
Hall of Justice
101 S. 5th Street
Camden, NJ 08103

**COURTESY COPY**
Honorable Michael J. Kassel, J.S.C.   Courtesy Copy
Camden County Superior Court
Hall of Justice
101 S. 5th Street
Camden, NJ 08103

**REGULAR MAIL AND EMAIL**

matthew.white@camdencounty.com
**ATTN: Matthew V. White, Esquire**
Camden County Court of Appeals
Construction Board of Appeals - Courthouse, 14th Floor
520 Market Street, 14th Floor
Camden, NJ 08102

rwight@chtownship.com
Robert N. Wright, Jr., Township Solicitor
Cherry Hill Township
820 Mercer Street
Cherry Hill, NJ 08002

bhawkins@chtownship.com
Brandon Hawkins, Deputy Township
Cherry Hill Township
820 Mercer Street
Cherry Hill, NJ 08002

I certify that the above statements made by me are true to the best of my knowledge and belief.  I am aware that is any of the foregoing statements made by me are wilfully false, I am subject to punishment.

BONNIE ROSNER
Legal Assistant to Gary W. Boguski

# EXHIBIT 3

Thomas D. Flinn, Esq. (019121981)

GARRITY, GRAHAM, MURPHY, GAROFALO & FLINN

A Professional Corporation

72 Eagle Rock Avenue

P.O. Box 438

East Hanover, NJ 07936

Telephone: 973-509-7500

Attorneys for Plaintiff

Our File No. 990.27341 /TDF

| | |
|---|---|
| DENISE WILLIAMS,<br><br>            Plaintiff,<br>vs.<br><br>TOWNSHIP OF CHERRY HILL, CAMDEN COUNTY CONSTRUCTION BOARD OF APPEALS, CHARLES CAHN, FREDERICK KUHN, WILLIAM CATTELL, JOHN DOES 1-10 and ABC CORPS. 1-10.<br><br>            Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: CAMDEN COUNTY<br><br>DOCKET NO.: CAM-L-769-19<br><br><br>Civil Action<br><br>**SECOND AMENDED<br>VERIFIED COMPLAINT,<br>JURY DEMAND,<br>DESIGNATION OF TRIAL COUNSEL<br>AND CERTIFICATION** |

Denise Williams, by and through her counsel, as and for her Second Amended Complaint, says on information and belief:

## NATURE OF ACTION

1. This is an action in lieu of Prerogative Writs, pursuant to R. 4:69 seeking to dismiss violations issued by the Township of Cherry Hill, and to reverse and strike findings and decision of the defendant, Camden County Construction Board of Appeals dated November 15, 2018.   Count II herein, also in lieu of prerogative writs, seeks dismissal of Notices of Violation and Order issued by Cherry Hill Township designated V-19-005 and V-19-006. In Count III this action also seeks an Order in the nature of mandamus to compel the defendant, township of Cherry Hill, to issue a Building Permit to plaintiff allowing her to complete construction of her residential structure at 1138 Winding Drive, Cherry Hill Township.

1

2.  In Counts IV – VII plaintiff seeks damages for tortious interference with her reasonable expectation of economic benefit, and for violation of her Civil Rights under the New Jersey Civil Rights Act, and under the New Jersey Constitution and the New Jersey Law Against Discrimination.

## THE PARTIES

3.  Plaintiff, Denise Williams, an African American female, is a citizen of the United States and State of New Jersey.

4.  Defendant, Camden County Construction board of Appeals, is a governmental entity created under N.J.S.A. 52:27D-126 and N.J.A.C. 5:23A.

5.  Defendant, Cherry Hill Township, is a municipality in the County of Camden, State of New Jersey.

6.  Defendant, Charles Cahn, at all times relevant herein, was the Mayor of Cherry Hill Township.

7.  Defendants, Frederick Kuhn and William Cattell, at all times relevant herein, served as Construction Code Officials of the defendant, Cherry Hill Township.

8.  Defendants, John Does 1-10 whose actual identities are presently unknown are fictitiously named individuals who committed, participated in or otherwise contributed to the deprivations of plaintiff's Civil and Constitutional Rights, tortiously interfered with plaintiff's reasonable economic prospects and/or violated the New Jersey Law Against Discrimination.

9.  ABC Corporations 1-10, whose actual identities are presently unknown, are fictitiously named entities who committed, participated in or otherwise contributed to the deprivations of plaintiff's Civil and Constitutional Rights, tortiously interfered with plaintiff's reasonable economic prospects and/or violated the New Jersey Law Against Discrimination.

## GENERAL ALLEGATOINS PERTINENT TO ALL COUNTS

10. Plaintiff purchased her property on Winding Drive in or about 2005 and in 2008 applied for and received a building permit for the construction of a home of approximately 18,000 square feet.  The permit was issued in 2009.

11. After the permit was issued, plaintiff diligently attempted to satisfy the defendant's construction officials for the purpose of constructing her home.

2

12. Despite the plaintiff's best efforts to satisfy the defendant's officials and to have her home built, plaintiff was faced with the repeated actions of defendant's desire to interfere with completion of her home.

13. Substantive work was done on plaintiff's home since 2009.

14. To date, plaintiff has expended tremendous sums for the purchase this property, excavation, architecture and engineering fees, construction costs and other costs.

15. As of the filing of this Amended Verified Complaint, the structure at 1138 Winding Drive has a fully formed concrete basement, framed exterior, sub flooring throughout the structure and a complete roof.

16. At present this structure is completely wrapped in Tyvek to prevent the elements from damaging the property.

17. In or about July 2017, plaintiff engaged in multiple meetings and conversations with the Cherry Hill Construction Official for the purpose of submitting an application to renew the building permit.

18. By November 2017, plaintiff has submitted a complete application for the renewal of the building permit.

19. Thereafter, defendant issued a building permit for the exterior of the building only.

20. The application that was submitted in or about November 2017 came after approximately four months of discussions between plaintiff and the defendant's construction official and in December 2017 was deemed by the construction official to be complete.

21. Throughout 2018 and to the present, the defendant failed to issue a construction permit for the remainder of the home despite repeated requests by plaintiff. During this time, defendant's construction official provided vague, unfounded and confusing reasons for the non-issuance of the building permit.

22. In December 2018 despite having supplied the defendant with a complete renewal application for the building permit in 2017, at the direction of Municipal Court Judge Charles Shimberg, and the Camden County Construction Board of Appeals, plaintiff

submitted additional information to comply with the request by the construction official.

23. To date, the defendant has not renewed the plaintiff's building permit.

24. During the first six months of 2019, the defendant's official has continued to provide vague, unfounded, contradictory and confusing reasons for the non-issuance of the building permit. For instance, but not by way of limitation, none of defendant's rejection notices referenced a need for a zoning permit, which was raised for the first time in Court proceedings in 2019.

25. In 2017, 2018 and continuing in 2019, plaintiff directly and through her contractor, as well as her licensed engineer, has attempted to satisfy the defendants with respect to the alleged deficiencies in the permit application.

26. During the pendency of the renewal permit process plaintiff has not performed any construction work on her home. The only work that has been done during that time was maintenance work as permitted under the Uniform Construction Code.

27. Plaintiff has a reasonable right of expectation to complete the construction of her home, has every intention to complete the project and is otherwise able to do so but for the actions of the defendant.

28. Through their actions, the defendants have intentionally and maliciously interfered with plaintiff's attempt to complete the construction of her home.

29. The plaintiff's original construction permit having expired, plaintiff has made diligent efforts directly, and through her contractor, to satisfy the requirements of the defendant's officials for the issuance of a renewal building permit.

30. The defendant through its construction official and other employees, has interfered with and thwarted the plaintiff in her attempt to obtain a permit, and continues to do so.

31. Despite refusing to issue a new construction permit and despite plaintiff's efforts to complete that process, defendants have through multiple legal filings charged plaintiff for not having a permit.

4

32. The actions of the defendant constituting harassment, intimidation, tortious interference, denial of plaintiff's Civil Rights and denial of plaintiff's Constitutional Rights have been egregious, pervasive, numerous and have taken place over the years that plaintiff has owned this property and has been attempting to have her home built. Those actions of the defendant include, but are not limited to the repeated filing of unfounded and frivolous legal proceedings against plaintiff for the sole purpose of intimidating, harassing interfering with and discriminating against plaintiff, which has caused substantial economic and other damages to plaintiff and to avoid the issuance of a building permit which would allow plaintiff to complete her home.

33. On or about June 17, 2019, the defendant filed an Order to Show Cause Summary Action and a Verified Complaint against plaintiff seeking, among other relief, the demolition of plaintiff's partially constructed home on the basis that the structure is unsafe and because there is not a current construction permit. Defendant filed that action without any expert report or opinion, or any other basis, for the allegation that the structure was unsafe in any way. Defendant filed that pleading also with the knowledge that plaintiff is aggressively pursuing the requisite permit.

34. In or about January 2019, defendant issued a notice of violation alleging that plaintiff was causing work to be done without a current permit. This alleged violation has been appealed to the Camden County Construction Board of Appeals, however, the notice was issued without any basis inasmuch as plaintiff is not working and has not worked on her property since the expiration of the original permit except as maintenance as permitted under the Uniform Construction Code.

35. Defendant filed an earlier notice of violation in July 2018 alleging that the plaintiff's property was unsafe, again without any scientific, expert or other basis for that allegation.

36. The defendant's July 2018 notice of violation for an unsafe structure was appealed to and heard by the Camden County Construction Board of Appeals which, after testimony from plaintiff's expert, found that the building was not unsafe. At the hearing before the Camden County Construction Board of Appeals the defendant produced no evidence that the property was unsafe. The only evidence produced by defendant at that hearing was a number of inconclusive photographs and the testimony of defendant's Construction Official who admitted that it was his supposition that mold was present in the structure. That assertion was untrue and no proof was presented of the existence of mold or any damage to the structure.

5

37. Despite the property having been found to be safe by Camden County Construction Board of Appeals, and having been found to be safe by a certified licensed engineer, the defendant has continued to post unsafe structure signs on plaintiff's property.

38. In or about April 2017, defendant issued a notice of violation for failure to renew permit. Defendant permitted that notice of violation to proceed to a Municipal Court complaint and trial which took place in 2018. Defendant proceeded with that notice of violation despite the knowledge that plaintiff had been actively seeking to renew the permit and had been in nearly constant communication with defendant's construction official beginning in late April 2017, culminating in the construction official's admission in December 2017 that the permit application submitted by plaintiff was at that point complete.

39. Defendant has filed these legal proceedings for the sole purpose of harassing, intimidating and interfering with plaintiff's attempt to complete the construction of her home in violation of plaintiff's civil and constitutional rights.

40. In addition to the filing of multiple unfounded and baseless legal proceedings against plaintiff, defendant, through its employees, agents and assigns engaged in conduct designed to further intimidate, harass and discriminate against plaintiff.

41. The Mayor of Cherry Hill Township, Defendant Charles Cahn, who, at all relevant times, resided directly across the street from plaintiff's property, has on multiple occasions, approached individuals working at plaintiff's property to advise them, untruthfully, that plaintiff does not pay her contractors and made other such disparaging comments about plaintiff which were designed to discourage the contractors from continuing to work for plaintiff.  One such incident occurred on or about February 2, 2019.

42. In addition to making these comments himself, the Mayor has also encouraged Cherry Hill Township Police Officers as well as other individuals, including a neighbor on Barbara Drive, to "warn" plaintiff's contractors about her alleged financial inability to pay.

43. The multiple comments to plaintiff's contractors were untrue and resulted in a disruption of the work being done by the contractors on plaintiff's home including causing multiple contractors, who, as a result of those comments, left the job unfinished despite being under contract with plaintiff.

6

44. Interference with plaintiff's contractors occurred again on or about February 7, 2019 when defendant, Kuhn, in an effort to create conflict with plaintiff's structural engineer, offered him work.

45. The egregious actions by and at the direction of the Mayor have resulted in substantial delay in the work on plaintiff's home and has made it difficult for plaintiff to retain contractors and to hire new contractors.

46. On diverse dates from 2014 through and including 2020, the defendant through its employees, official's, agents and assigns, has caused various individuals and companies to travel to plaintiff's property and to engage plaintiff and her contractors in ways so as to sow discord with other property owners on Winding Drive and with plaintiff's contractors. This includes multiple visits from Cherry Hill police, construction code and other officials of defendant, defendant's Township vehicles and demolition crews which were directed to plaintiff's property for the sole purpose of harassing, intimidating, bullying and interfering with plaintiff in her attempts to complete the construction of her home.

47. Examples of harassing, threatening, intimidating conduct engaged in by the individual defendants themselves or by others at their direction include:

   a. Despite the conclusion of the Camden County Construction Board of Appeals that the structure was not unsafe, and with no evidence to support the claim, defendants continued to post "UNSAFE STRUCTURE" signs at the property on or about November 18, 2018, November 22, 2018 and September 18, 2019;

   b. Defendants issued Notices of Violation and Penalty Orders on or about January 25, 2019 for an unsafe structure and working without a permit with no evidence to support either alleged violation, and in direct disregard of the finding by the Camden County Construction Board of Appeals that the structure was not unsafe;

   c. Conducting surveillance of the property, plaintiff's contractors, plaintiff and members of her family on, among others, the following occasions:

      i.   Flying a drone over the property on or about June 18, 2019;
      ii.  Following plaintiff and family members when leaving the property from August 2018 through December 2018, and throughout 2019 and 2020;
      iii. Parking or standing outside the property while normal maintenance was being performed on or about August 16, 2019; September 2,

7

2019; September 23, 2019; September 24, 2019; October 6, 2019; October 7, 2019; October 8, 2019; October 12, 2019; October 15, 2019; October 20, 2019; October 21, 2019; February 8, 2020; February 9, 2020; February 23, 2020; February 24, 2020; May 27, 2020; May 28, 2020; May 29, 2020; May 30, 2020;

iv.   Sending fire equipment to park outside the property, blast horns and take photos on or about August 19, 2019;

v.   Following plaintiff when she left the property on or about October 1, 2019; February 23, 2020; February 24, 2020; May 17, 2020; May 30, 2020; June 1, 2020; June 4, 2020;

vi.   Conducting "drive bys" and photographing the property while routine maintenance was performed on or about June 1, 2020; June 2, 2020; June 3, 2020; June 4, 2020;

vii.   Following plaintiff from her home on multiple occasions in 2019 and on or about June 5, 2020; June 7, 2020; June 8, 2020; August 18, 2020; September 9, 2020; September 25, 2020; October 15, 2020; October 17, 2020; October 27, 2020; October 28, 2020; October 29, 2020; November 3, 2020; November 9, 2020; November 17, 2020; December 11, 2020.

d.   Conducting warrantless entries onto plaintiff's property and into plaintiff's structure on numerous occasions including but not limited to July 18, 2018; October 29, 2018 (which illegal entry was the basis for the bogus January, 2019 Notices of Violations Order and Penalty); January 8, 2019; January 25, 2019; August 1, 2019;

e.   Denying plaintiffs request for a permit to perform minor repairs/maintenance on or about November 30, 2020;

f.   Sending contractors to plaintiff's property to advise plaintiff they were instructed to prepare price quotes for the demolition of the structure on or about January 21, 2019 and ultimately seeking a Court Order authorizing demolition of plaintiff's structure;

g.   Dispatching Cherry Hill Police Department to plaintiff's property on a report of a break-in on or about March 31, 2020.  Plaintiff was present at the fully secured property with two (2) African-American contractors.

48. As a result of the harassing and egregious conduct of the Mayor and other of the defendant officials, the plaintiff has been subjected to repeated acts of vandalism, profanity and racial epithet on plaintiff's mailbox and on plaintiff's property.

8

49. On diverse dates employees and officials of Cherry Hill Township contacted plaintiff's mortgage company and provided incomplete and untruthful information to the mortgage company regarding alleged violations being asserted against plaintiff and other "concerns" that the Township had with respect to plaintiff. The purpose of these communications was to interfere with plaintiff's relationship with her mortgage company and to prevent her from obtaining the funding necessary to complete the construction of her home.

50. During the construction of plaintiff's home the defendant's communications director issued a press release indicating that the well-known professional singer, Deniece Williams, was the owner of the property on Winding Drive. This created a media circus. This press release was issued with the knowledge that plaintiff was not that individual. The media's attention expanded to claim that the house was abandoned and in complete disrepair. The resulting commotion interfered with work being done by plaintiff's contractors and caused a delay in the work being done at plaintiff's home.

51. Despite having submitted complete applications for a renewal of permit plaintiff is still not in possession of the permit other than the limited permit issued in or about December 2017 for the exterior of her home. In response to the submission of those sets of applications, the defendant has at times delayed responding to those applications or questions raised by plaintiff and her contractor regarding the application process. Plaintiff has also received contradictory, inaccurate, vague and confusing responses from defendant's construction official having to do with the alleged deficiencies in those applications.

52. In July 2018 and on two occasions in September 2018, the defendant's construction official, without notice to defendant or her counsel, sought and received warrants to enter defendant's building. In both instances these warrants were based upon incomplete and insufficient information.

53. In addition to the three warranted entries into plaintiff's property, defendant's construction official has without a warrant and without notice to plaintiff, on multiple occasions, illegally entered plaintiff's property. These illegal entries were admitted to plaintiff by the construction official ostensibly for the purpose of determining whether there were any unsafe aspects to plaintiff's property. Illegal entry occurred on August 1, 2019 and on at least two (2) occasions in 2020.

54. In or about 2014, defendant drastically increased plaintiff's real estate taxes disparately with other properties in that area which were completed and occupied homes even though plaintiff's property was far from completed and unoccupied.

55. Shortly after illegally and inappropriately raising the real estate taxes on plaintiff's property in or about 2014, without plaintiff filing a formal appeal, defendant did significantly reduce the property taxes.

56. It is clear that the Township is doing everything possible to avoid the issuance of a building permit to plaintiff and to prevent plaintiff from completing and moving into her home on Winding Drive.

57. On November 28, 2018, plaintiff filed a Tort Claims notice against defendant. Since the filing of the Tort Claims Notice defendant has continued to violate plaintiff's civil and constitutional rights, has discriminated against plaintiff and tortuously interfered with her ability to complete the construction of her home.

58. On or about January 25, 2019 defendant, Township of Cherry Hill, by and through defendant, Construction Code Officers, issued Notices of Violation and Order and Penalty Nos. V-19-005 and V-19-006 alleging plaintiff failed to comply with previous notices, worked without a valid permit and alleging the property was unsafe due to water damage.

59. The allegations in the referenced notices issued by the Township by and through its Construction Code Officials, defendants Cattell and Kuhn, were false and made for the sole purpose of harassing and discriminating against plaintiff.

## COUNT I
## PREROGATIVE WRIT AGAINST DEFENDANT,
## CAMDEN COUNTY CONSTRUCTION BOARD OF APPEALS

60. Plaintiff appealed a Notice of Violation issued by defendant, Cherry Hill Township, and its Construction Code Officials, alleging unsafe structure to the Camden County Construction Board of Appeals.

61. Evidence was presented to the defendant, Camden County Construction Board of Appeals, on the issue of whether plaintiff's structure was unsafe.

62. The Camden County Construction Board of Appeals found the plaintiff's structure was not unsafe.

10

63. Defendant, Camden County Construction board of Appeals, upon finding plaintiff's structure was not unsafe, required that plaintiff conduct additional tests to determine whether the structure was safe.

64. Defendant, Camden County Construction Board of Appeal's requirement that plaintiff conduct additional tests without basis in law or fact was arbitrary, capricious and unreasonable.

65. Defendant, Camden County Construction Board of Appeals, in its November 15, 2018 decision also entered an Order with respect to an allegation that work had been done without a permit.

66. No issue before the defendant, Camden County Construction Board of Appeals, included a question of whether plaintiff had performed work without a permit, and plaintiff had no notice that said issue would be presented to and/or decided by defendant, Camden County Construction Board of Appeals.

67. Said decision of the defendant, Camden County Construction Board of Appeals, was issued without the benefit of due process, and was arbitrary, capricious and unreasonable.

WHEREFORE, plaintiff demands judgment against the defendant, Camden County Construction Board of Appeals, as follows:

   A. Reversing the decision of defendant, Camden County Construction Board of Appeals, requiring additional testing of the structure;
   B. Reversing the decision of the defendant, Camden County Construction Board of Appeals, that plaintiff performed work on the structure without a permit in violation of the Uniform Construction Code;
   C. For reasonable costs and counsel fees; and
   D. For such other and further relief as the Court may deem just and equitable.

### COUNT II
### PREROGATIVE WRIT AGAINST DEFENDANT,
### CAMDEN COUNTY CONSTRUCTION BOARD OF APPEALS

68. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

69. Plaintiff's appeal to the Camden County Construction Board of Appeals from V-19-005 and V-19-006 is stayed pending resolution of the pending action.

11

70. V-19-005 and V-19-006 are nullified because the November 2018 decision of the defendant, Camden County Construction Board of Appeals, is a nullity for the reasons set for the in Count I.

WHEREFORE, plaintiff demands judgment against defendant, Camden County Construction Board of Appeals, as follows:

    A.  Ordering defendant, Camden County Construction Board of Appeals, to dismiss V-19-005 and V-19-006;
    B.  For reasonable counsel fees and costs; and
    C.  For such other and further relief as the Court may deem just and equitable.

## COUNT III
## PREROGATIVE WRIT AGAINST CHERRY HILL TOWNSHIP

71. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

72. Cherry Hill Township's refusal to issue a renewal of plaintiff's building permit following its expiration is unjustifiable, arbitrary and capricious.

WHEREFORE, plaintiff demands judgment against defendant, Cherry Hill Township, as follows:

    A.  Compelling the defendant Township to issue a building permit which will allow plaintiff to complete the construction of her home.
    B.  For reasonable counsel fees and costs; and
    C.  For such other and further relief as the court may deem just and equitable.

## COUNT IV
## AGAINST DEFENDANTS, CHERRY HILL TOWNSHIP,
## CHARLES CAHN, FREDERICK KUHN AND WILLIAM CATTELL
## FOR VIOLATION OF CIVIL RIGHTS

73. Plaintiff brings this cause of action under N.J.S.A. 10:6-2(c) of the New Jersey Civil Rights Act.

74. The refusal of defendants to issue a building permit for the completion of construction of plaintiff's home is a deprivation of substantive due process in violation of N.J.S.A. 10:6-2.

75. The refusal of defendants to issue a building permit for the completion of construction

12

of plaintiff's home is a deprivation of plaintiff's equal protection rights in violation of N.J.S.A. 10:6-2.

76. The refusal of defendants to issue a building permit for the completion of construction of plaintiff's home is a deprivation of plaintiff's substantive rights and privileges secured by the Constitution or laws of the State of New Jersey in violation of N.J.S.A. 10:6-2.

77. The refusal of defendants to issue a building permit for the completion of construction of plaintiff's home is a deprivation of plaintiff's substantive rights and privileges secured by the Constitution or laws of the United States in violation of N.J.S.A. 10:6-2.

WHEREFORE, plaintiff demands judgment against defendants, Cherry Hill Township, Charles Cahn, William Cattell and Frederick Kuhn as follows:

    A.  For compensatory and consequential damages;
    B.  For punitive damages
    C.  For Civil Penalty pursuant to N.J.S.A. 10:6-2(c);
    D.  For reasonable counsel fees and costs; and
    E.  For such other and further relief as the Court may deem just and equitable.

## COUNT V
## AGAINST DEFENDANT, CHARLES CAHN
## FOR VIOLATION OF CIVIL RIGHTS

78. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

79. Defendant, Charles Cahn, under Color of Law, has engaged in a series of acts intended to harass plaintiff through use of threats, intimidation and coercion which have deprived plaintiff of privileges and substantive rights secured by the Constitutions or laws of the United States and State of New Jersey or otherwise interfered with said rights and privileges in violation of N.J.S.A. 10:6-2.

WHEREFORE, plaintiff demands judgment against defendant, Charles Cahn, as follows:

    A.  For compensatory and consequential damages;
    B.  For punitive damages
    C.  For Civil Penalty pursuant to N.J.S.A. 10:6-2(c);
    D.  For reasonable counsel fees and costs; and

13

E.  For such other and further relief as the Court may deem just and equitable.

## COUNT VI
## AGAINST DEFENDANTS, WILLIAM CATTELL AND FREDERICK KUHN, FOR VIOLATION OF CIVIL RIGHTS

80. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

81. The refusal of defendants, William Cattell and Frederick Kuhn, acting under Color of Law, to issue to plaintiff a building permit or renewal to complete the construction of her home, constitutes a deprivation of and/or interference with plaintiff's substantive rights and privileges secured by the Constitutions or laws of the United States and the State of New Jersey in violation of N.J.S.A. 10:6-2.

WHEREFORE, plaintiff demands judgment against defendants, William Cattell and Frederick Kuhn, as follows:

A.  For compensatory and consequential damages;
B.  For punitive damages
C.  For Civil Penalty pursuant to N.J.S.A. 10:6-2(c);
D.  For reasonable counsel fees and costs; and
E.  For such other and further relief as the Court may deem just and equitable.

## COUNT VII
## LAW AGAINST DISCRIMINATION AGAINST DEFENDANTS, CHERRY HILL TOWNSHIP,  CHARLES CAHN, WILLIAM CATTELL AND FREDERICK KUHN

82. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

83. Defendants have conducted a campaign as previously described of depriving plaintiff of her Constitutional and Civil Rights on the basis of her race in violation of N.J.S.A. 10:5-1, et seq.

WHEREFORE, plaintiff demands judgment against defendants, Cherry Hill Township, William Cattell, Charles Cahn and Frederick Kuhn, as follows:

A.  For compensatory and consequential damages;
B.  For punitive damages
C.  For reasonable counsel fees and costs; and

14

D.  For such other and further relief as the Court may deem just and equitable.

## COUNT VIII
## LAW AGAINST DISCRIMINATION AGAINST DEFENDANTS, CHERRY HILL TOWNSHIP,  CHARLES CAHN, WILLIAM CATTELL AND FREDERICK KUHN

84. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

85. Defendants have conducted a campaign as previously described of depriving plaintiff of her Constitutional and Civil Rights on the basis of her race in violation of the New Jersey Constitution, Art. 1, Para. V.

WHEREFORE, plaintiff demands judgment against defendants, Cherry Hill Township, William Cattell, Charles Cahn and Frederick Kuhn, as follows:

    A.  For compensatory and consequential damages;
    B.  For punitive damages
    C.  For reasonable counsel fees and costs; and
    D.  For such other and further relief as the Court may deem just and equitable.

## COUNT IX
## TORTIOUS INTERFERENCE AGAINST DEFENDANTS, CHERRY HILL TOWNSHIP,  CHARLES CAHN, WILLIAM CATTELL AND FREDERICK KUHN

86. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

87. Plaintiff has a reasonable expectation of economic benefit upon the completion of the construction of here home with which defendants have tortiously interfered.

WHEREFORE, plaintiff demands judgment against defendants, Cherry Hill Township, William Cattell, Charles Cahn and Frederick Kuhn, as follows:

    A.  For compensatory, consequential and punitive damages;
    B.  Ordering defendants to issue a building permit for the completion of the construction of plaintiff's home;
    C.  Enjoining defendants from further interference with plaintiff's construction of her home;
    D.  For reasonable counsel fees and costs; and

E.  For such other and further relief as the Court may deem just and equitable.

## JURY DEMAND

Plaintiff, Denise Williams, hereby demands a trial by jury as to all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Thomas D. Flinn, Esq. is hereby designated as trial counsel for Plaintiff, Denise Williams in connection with the above matter.

GARRITY, GRAHAM, MURPHY,
GAROFALO & FLINN, P.C.
Attorneys for Plaintiff

Dated: February 2, 2021                BY: /s/ Thomas D. Flinn
                                            THOMAS D. FLINN

## RULE 4:5-1 CERTIFICATION

I hereby certify in accordance with R. 4:5-1 that to the best of my knowledge there are no other pending cases or other proceedings in the Superior Court of New Jersey, except A-001131-19T1 which is an appeal from a civil penalty for failure to renew an expired construction permit, and which the undersigned believes is presently pending, and that there are no other parties known that should be joined in this action.

16

GARRITY, GRAHAM, MURPHY,
GAROFALO & FLINN, P.C.
Attorneys for Plaintiff

Dated: February 2, 2021                          BY:  */s / Thomas D. Flinn*
                                                                THOMAS D. FLINN

## <u>CERTIFICATION PURSUANT TO R. 1:38-7</u>

Pursuant to <u>R</u>. 1:38-7(b), I hereby certify that all confidential personal identifies, if any, have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

GARRITY GRAHAM MURPHY
GAROFALO & FLINN, P.C.
Attorneys for Plaintiff

By: */s / Thomas D. Flinn*
                      THOMAS D. FLINN

Dated: February 2, 2021

## **VERIFICATION**

DENISE WILLIAMS, of full age, hereby certifies as follows:

1. I am the Plaintiff in the above-entitled matter.

2. I have read the Verified Complaint and verify that the facts set forth therein are true to the best of my knowledge, information and belief and the said Complaint is made in truth and good faith for the causes set forth therein.

3. I certify that the above statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: 2|1|2021

_____

Denise Williams

# EXHIBIT 4

-Thomas D. Flinn, Esq. (019121981)

**GARRITY, GRAHAM, MURPHY, GAROFALO & FLINN**

**A Professional Corporation**

**72 Eagle Rock Avenue**

**P.O. Box 438**

**East Hanover, NJ 07936**

**Telephone: 973-509-7500**

**Attorneys for Plaintiff**

**Our File No. 990.27341 /TDF**

| | |
|---|---|
| DENISE WILLIAMS,<br><br>              Plaintiff,<br>vs.<br><br>TOWNSHIP OF CHERRY HILL, CAMDEN COUNTY CONSTRUCTION BOARD OF APPEALS, CHARLES CAHN, FREDERICK KUHN, WILLIAM CATTELL, JOHN DOES 1-10 and ABC CORPS. 1-10.<br><br>              Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: CAMDEN COUNTY<br><br>DOCKET NO.: CAM-L-769-19<br><br>Civil Action<br><br>**THIRD AMENDED<br>VERIFIED COMPLAINT,<br>JURY DEMAND,<br>DESIGNATION OF TRIAL COUNSEL<br>AND CERTIFICATION** |

     Denise Williams, by and through her counsel, as and for her Third Amended Verified Complaint, says on information and belief:

**NATURE OF ACTION**

1. 1.This is an action in lieu of Prerogative Writs, pursuant to R. 4:69 seeking to dismiss violations issued by the Township of Cherry Hill, and to reverse and strike findings and decision of the Defendant, Camden County Construction Board of Appeals dated November 15, 2018.   Count II herein, also in lieu of prerogative writs, seeks dismissal of Notices of Violation and Order issued by Cherry Hill Township designated V-19-005 and V-19-006.

2. In Counts III – V Plaintiff seeks damages for violation of her Civil Rights under the New Jersey Civil Rights Act, and under the New Jersey Constitution and under the New Jersey Law Against Discrimination.

1

## THE PARTIES

3.  Plaintiff, Denise Williams, an African American female, is a citizen of the United States and State of New Jersey.

4.  Defendant, Camden County Construction board of Appeals, is a governmental entity created under N.J.S.A. 52:27D-126 and N.J.A.C. 5:23A.

5.  Defendant, Cherry Hill Township (Township"), is a municipality in the County of Camden, State of New Jersey.

6.  Defendant, Charles Cahn ("Cahn"), at all times relevant herein, was the Mayor of Cherry Hill Township.

7.  Defendants, Frederick Kuhn ("Kuhn") and William Cattell ("Cattell"), at all times relevant herein, served as Construction Code Officials of the Defendant, Cherry Hill Township.

8.  Defendants, John Does 1-10, whose actual identities are presently unknown, are fictitiously named individuals who committed, participated in or otherwise contributed to the deprivations of Plaintiff's Civil and Constitutional Rights, and violated the New Jersey Law Against Discrimination.

9.  Defendants, ABC Corporations 1-10, whose actual identities are presently unknown, are fictitiously named entities who committed, participated in or otherwise contributed to the deprivations of Plaintiff's Civil and Constitutional Rights, and violated the New Jersey Law Against Discrimination.

## GENERAL ALLEGATIONS PERTINENT TO ALL COUNTS

10. Plaintiff purchased her property on Winding Drive in or about 2005 and in 2008 applied for and received a building permit for the construction of a home of approximately 18,000 square feet.  The permit was issued in 2009.

11. After the permit was issued, Plaintiff diligently attempted to satisfy the Defendant's Construction Officials for the purpose of constructing her home.

12. Despite the Plaintiff's best efforts to satisfy the Defendant's Officials and to have her home built, Plaintiff was faced with the repeated actions of Defendant Cahn's desire to interfere with completion of her home.

13. Substantive work was done on Plaintiff's home since 2009.

2

14. To date, Plaintiff has expended tremendous sums for the purchase this property, excavation, architecture and engineering fees, construction costs and other costs.

15. As of the filing of this Third Amended Verified Complaint, the structure at 1138 Winding Drive has a fully formed concrete basement, framed exterior, sub-flooring throughout the structure, which is sound, and a complete roof.

16. At present this structure is completely wrapped in Tyvek to prevent the elements from damaging the property.

17. In or about July 2017, Plaintiff engaged in multiple meetings and conversations with the Cherry Hill Construction Official for the purpose of submitting an application to renew the building permit.

18. By November 2017, Plaintiff has submitted a complete application for the renewal of the building permit.

19. Thereafter, Defendant Cattell issued a building permit for the exterior of the building only.

20. The application that was submitted in or about November 2017 came after approximately four (4) months of discussions between Plaintiff and the Defendant's Construction Official, Defendant Cattel, and in December 2017 was deemed by Construction Official Cattell to be complete.

21. Throughout 2018 and to the present, the Defendant failed to issue a construction permit for the remainder of the home despite repeated requests by Plaintiff. During this time, Defendant's Construction Officials Cattell and Kuhn provided vague, unfounded and confusing reasons for the non-issuance of the building permit. Despite Defendant Cattell having advised Plaintiff that she could utilize the plans previously submitted in support of the original building permit, which had been approved, Defendant Kuhn required a new submission.

22. In December 2018 despite having supplied the Defendant with a complete renewal application for the building permit in 2017, at the direction of Municipal Court Judge Charles Shimberg, and the Camden County Construction Board of Appeals, Plaintiff submitted additional information to comply with the request by the Construction Official.

23. To date, the Defendant has not renewed the Plaintiff's building permit.

24. During the first six (6) months of 2019, the Defendant's Officials Cattell and Kuhn have continued to provide vague, unfounded, contradictory and confusing reasons for the non-issuance of the building permit. For instance, but not by way of limitation, none of Defendant's rejection notices referenced a need for a zoning permit, which was raised for the first time in Court proceedings in 2019.

25. In 2017, 2018 and continuing in 2019, Plaintiff directly and through her contractor, as well as her licensed engineer, has attempted to satisfy the Defendants with respect to the alleged deficiencies in the permit application.

26. During the pendency of the renewal permit process Plaintiff has not performed any construction work on her home. The only work that has been done during that time was maintenance work as permitted under the Uniform Construction Code.

27. Plaintiff has a reasonable right of expectation to complete the construction of her home, has every intention to complete the project and is otherwise able to do so but for the actions of the Defendant.

28. Through their actions, the Defendants have intentionally and maliciously interfered with Plaintiff's attempt to complete the construction of her home.

29. The Plaintiff's original construction permit having expired, Plaintiff has made diligent efforts directly, and through her contractor, to satisfy the requirements of the Defendant's Officials for the issuance of a renewal building permit.

30. The Defendant through its Construction Official and other employees, has interfered with and thwarted the Plaintiff in her attempt to obtain a permit, and continues to do so.

31. Despite refusing to issue a new construction permit and despite Plaintiff's efforts to complete that process, Defendants Township, Cattell and Kuhn have, through multiple legal filings, charged Plaintiff for not having a permit.

32. The actions of the Defendants constituting harassment, intimidation, denial of Plaintiff's Civil Rights and denial of Plaintiff's Constitutional Rights have been egregious, pervasive, numerous and have taken place over the years that Plaintiff has

4

owned this property and has been attempting to have her home built. Those actions of the Defendant include, but are not limited to the repeated filing of unfounded and frivolous legal proceedings against Plaintiff for the sole purpose of intimidating, harassing interfering with and discriminating against Plaintiff, which has caused substantial economic and other damages to Plaintiff and to avoid the issuance of a building permit which would allow Plaintiff to complete her home.

33. On or about June 17, 2019, the Defendant Township, at the direction of Defendants Cahn, Cattell and Kuhn, filed an Order to Show Cause Summary Action and a Verified Complaint against Plaintiff seeking, among other relief, the demolition of Plaintiff's partially constructed home on the basis that the structure is unsafe and because there is not a current construction permit. Defendant filed that action without any expert report or opinion, or any other basis, for the allegation that the structure was unsafe in any way. Defendant filed that pleading also with the knowledge that Plaintiff is aggressively pursuing the requisite permit.

34. In or about January 2019, Defendant Kuhn issued a Notice of Violation alleging that Plaintiff was causing work to be done without a current permit. This alleged violation has been appealed to the Camden County Construction Board of Appeals, however, the notice was issued without any basis inasmuch as Plaintiff is not working and has not worked on her property since the expiration of the original permit except as maintenance as permitted under the Uniform Construction Code.

35. Defendant Cattell had filed an earlier Notice of Violation in July 2018 alleging that the Plaintiff's property was unsafe, again without any scientific, expert or other basis for that allegation.

36. The Defendant Cattell's July 2018 Notice of Violation for an unsafe structure was appealed to and heard by the Camden County Construction Board of Appeals which, after testimony from Plaintiff's expert, found that the building was not unsafe. At the hearing before the Camden County Construction Board of Appeals the Defendant produced no evidence that the property was unsafe. The only evidence produced by Defendant at that hearing was a number of inconclusive photographs and the testimony of Defendant Township's Construction Official, Cattell, who admitted that it was his supposition that mold was present in the structure. That assertion was untrue and no proof was presented of the existence of mold or any damage to the structure.

37. Despite the property having been found to be safe by Camden County Construction Board of Appeals, and having been found to be safe by a certified licensed engineer, the Defendants Township, Cattell and Kuhn have continued to post unsafe structure signs on Plaintiff's property.

38. In or about April 2017, Defendant Township, by its Construction Code Official defendant Cattell, issued a Notice of Violation for failure to renew permit. Defendant permitted that notice of violation to proceed to a Municipal Court complaint and trial which took place in 2018. Defendant proceeded with that notice of violation despite the knowledge that Plaintiff had been actively seeking to renew the permit and had been in nearly constant communication with Defendant's Construction Official beginning in late April 2017, culminating in Defendant Construction Official Cattell's admission in December 2017 that the permit application submitted by Plaintiff was at that point complete.

39. Defendants Township, Cattell and Kuhn have filed these legal proceedings for the sole purpose of harassing, intimidating and interfering with Plaintiff's attempt to complete the construction of her home in violation of Plaintiff's Civil and Constitutional Rights and in violation of the New Jersey Law Against Discrimination.

40. In addition to the filing of multiple unfounded and baseless legal proceedings against Plaintiff, Defendant, through its employees, agents and assigns engaged in conduct designed to further intimidate, harass and discriminate against Plaintiff.

41. The Mayor of Cherry Hill Township, Defendant Charles Cahn, who, at all relevant times, resided directly across the street from Plaintiff's property, has on multiple occasions, approached individuals working at Plaintiff's property to advise them, untruthfully, that Plaintiff does not pay her contractors and made other such disparaging comments about Plaintiff which were designed to discourage the contractors from continuing to work for Plaintiff.  One such incident occurred on or about February 2, 2019.

42. In addition to making these comments himself, the Mayor has also encouraged Cherry Hill Township Police Officers as well as other individuals, including a neighbor on Barbara Drive, to "warn" Plaintiff's contractors about her alleged financial inability to pay.

43. The multiple comments to Plaintiff's contractors were untrue and resulted in a disruption of the work being done by the contractors on Plaintiff's home including

6

causing multiple contractors, who, as a result of those comments, left the job unfinished despite being under contract with Plaintiff.

44. Interference with Plaintiff's contractors occurred again on or about February 7, 2019 when Defendant, Kuhn, in an effort to create conflict with Plaintiff's structural engineer, offered him work.

45. The egregious actions by and at the direction of the Mayor have resulted in substantial delay in the work on Plaintiff's home and has made it difficult for Plaintiff to retain contractors and to hire new contractors.

46. On diverse dates from 2014 through and including 2020, the Defendants Township and Cahn, through the Township's employees, official's, agents and assigns, has caused various individuals and companies to travel to Plaintiff's property and to engage Plaintiff and her contractors in ways so as to sow discord with other property owners on Winding Drive and with Plaintiff's contractors. This includes multiple visits from Cherry Hill police, Construction Code and other officials of Defendant, Defendant's Township vehicles and demolition crews which were directed to Plaintiff's property for the sole purpose of harassing, intimidating, bullying and interfering with Plaintiff in her attempts to complete the construction of her home.

47. Examples of harassing, threatening, intimidating conduct engaged in by the individual Defendants themselves or by others at their direction include:

   a. Despite the conclusion of the Camden County Construction Board of Appeals that the structure was not unsafe, and with no evidence to support the claim, Defendants Township, Cattell and Kuhn, at the behest and direction of Defendant Cahn, continued to post "UNSAFE STRUCTURE" signs at the property on or about November 18, 2018, November 22, 2018 and September 18, 2019;

   b. Defendants Township, Cattell and Kuhn, at the behest and direction of Defendant Cahn, issued Notices of Violation and Penalty Orders on or about January 25, 2019 for an unsafe structure and working without a permit with no evidence to support either alleged violation, and in direct disregard of the finding by the Camden County Construction Board of Appeals that the structure was not unsafe;

   c. At the behest and direction of Defendant Cahn, conducting surveillance of the property, Plaintiff's contractors, Plaintiff and members of her family on, among others, the following occasions:

7

     i.      Flying a drone over the property on or about June 18, 2019;

     ii.     Following Plaintiff and family members when leaving the property from August 2018 through December 2018, and throughout 2019 and 2020;

     iii.    Parking or standing outside the property while normal maintenance was being performed on or about August 16, 2019; September 2, 2019; September 23, 2019; September 24, 2019; October 6, 2019; October 7, 2019; October 8, 2019; October 12, 2019; October 15, 2019; October 20, 2019; October 21, 2019; February 8, 2020; February 9, 2020; February 23, 2020; February 24, 2020; May 27, 2020; May 28, 2020; May 29, 2020; May 30, 2020;

     iv.    Sending fire equipment to park outside the property, blast horns and take photos on or about August 19, 2019;

     v.     Following Plaintiff when she left the property on or about October 1, 2019; February 23, 2020; February 24, 2020; May 17, 2020; May 30, 2020; June 1, 2020; June 4, 2020;

     vi.    Conducting "drive bys" and photographing the property while routine maintenance was performed on or about June 1, 2020; June 2, 2020; June 3, 2020; June 4, 2020;

     vii.   Following Plaintiff from her home on multiple occasions in 2019 and on or about June 5, 2020; June 7, 2020; June 8, 2020; August 18, 2020; September 9, 2020; September 25, 2020; October 15, 2020; October 17, 2020; October 27, 2020; October 28, 2020; October 29, 2020; November 3, 2020; November 9, 2020; November 17, 2020; December 11, 2020.

d.  At the behest and direction of Defendant Cahn, conducting warrantless entries onto Plaintiff's property and into Plaintiff's structure on numerous occasions including but not limited to July 18, 2018; October 29, 2018 (which illegal entry was the basis for the bogus January, 2019 Notices of Violations Order and Penalty); January 8, 2019; January 25, 2019; August 1, 2019; July, 2020 and October, 2020 and February, 2021

e.  Defendant Kuhn denying Plaintiffs request for a permit to perform minor repairs/maintenance on or about November 30, 2020;

f.  Defendant Kuhn sending contractors to Plaintiff's property to advise Plaintiff they were instructed to prepare price quotes for the demolition of the structure on or about January 21, 2019 and ultimately seeking a Court Order authorizing demolition of Plaintiff's structure;

g.  At the behest and direction of Defendant Cahn, dispatching Cherry Hill Police Department to Plaintiff's property on a report of a break-in on or about March 31, 2020.  Plaintiff was present at the fully secured property with two (2) African-American contractors.

48. As a result of the harassing and egregious conduct of the Mayor and other of the Defendant Officials, the Plaintiff has been subjected to repeated acts of vandalism, profanity and racial epithet on Plaintiff's mailbox and on Plaintiff's property.

49. At the behest and direction of Defendant Cahn, on diverse dates employees and officials of Cherry Hill Township contacted Plaintiff's mortgage company and provided incomplete and untruthful information to the mortgage company regarding alleged violations being asserted against Plaintiff and other "concerns" that the Township had with respect to Plaintiff. The purpose of these communications was to interfere with Plaintiff's relationship with her mortgage company and to prevent her from obtaining the funding necessary to complete the construction of her home.

50. At the behest and direction of Defendant Cahn, and during the construction of Plaintiff's home, the Defendant's Communications Director issued a press release indicating that the well-known professional singer, Denise Williams, was the owner of the property on Winding Drive. This created a media circus. This press release was issued with the knowledge that Plaintiff was not that individual. The media's attention expanded to claim that the house was abandoned and in complete disrepair. The resulting commotion interfered with work being done by Plaintiff's contractors and caused a delay in the work being done at Plaintiff's home.

51. Despite having submitted complete applications for a renewal of permit, Plaintiff is still not in possession of the permit other than the limited permit issued in or about December 2017 for the exterior of her home. In response to the submission of those sets of applications, the Defendants Township, Cattell and Kuhn, at the behest and direction of Defendant Cahn, have at times delayed responding to those applications or questions raised by Plaintiff and her contractor regarding the application process. Plaintiff has also received contradictory, inaccurate, vague and confusing responses from Defendant's Construction Official having to do with the alleged deficiencies in those applications.

52. In July 2018 and on two (2) occasions in September 2018, the Defendant's Construction Official, Defendant Cattell, without notice to Plaintiff or her counsel, sought and received warrants to enter Plaintiff's building. In both instances these warrants were based upon incomplete and insufficient information.

9

53. In addition to the three (3) warranted entries into Plaintiff's property, Defendant's Construction Officials, Defendants Cattell and Kuhn, have, without a warrant and without notice to Plaintiff, on multiple occasions, illegally entered Plaintiff's property. These illegal entries were admitted to Plaintiff by the Construction Official, Defendant Kuhn, ostensibly for the purpose of determining whether there were any unsafe aspects to Plaintiff's property.  Illegal entry occurred on August 1, 2019 and on at least two (2) occasions in 2020.

54. In or about 2014, Defendant Township, at the behest and direction of Defendant Cahn, drastically increased Plaintiff's real estate taxes disparately with other properties in that area which were completed and occupied homes even though Plaintiff's property was far from completed and unoccupied.

55. Shortly after illegally and inappropriately raising the real estate taxes on Plaintiff's property in or about 2014, without Plaintiff filing a formal appeal, Defendant did significantly reduce the property taxes.

56. It is clear that the Defendant Township, through the actions of Defendants Cahn, Kuhn and Cattell, is doing everything possible to avoid the issuance of a building permit to Plaintiff and to prevent Plaintiff from completing and moving into her home on Winding Drive.

57. On November 28, 2018, Plaintiff filed a Tort Claims Notice against Defendant. Since the filing of the Tort Claims Notice, Defendant Township, through the actions of Defendants Cattell and Kuhn, and at the behest and direction of Defendant Cahn, have continued to violate Plaintiff's Civil and Constitutional Rights, has discriminated against Plaintiff and interfered with her ability to complete the construction of her home.

58. On or about January 25, 2019 Defendant, Township of Cherry Hill, by and through Defendant Construction Code Official Defendant Kuhn, issued Notices of Violation and Order and Penalty Nos. V-19-005 and V-19-006 alleging Plaintiff failed to comply with previous notices, worked without a valid permit and alleging the property was unsafe due to water damage.

59. The allegations in the referenced notices issued by the Defendant Township by and through its Construction Code Officials, Defendants Cattell and Kuhn, at the behest and direction of Defendant Cahn, were false and made for the sole purpose of harassing and discriminating against Plaintiff.

## COUNT I
## PREROGATIVE WRIT AGAINST DEFENDANT,
## CAMDEN COUNTY CONSTRUCTION BOARD OF APPEALS

60. Plaintiff appealed a Notice of Violation issued by Defendant, Cherry Hill Township, and its Construction Code Officials, alleging unsafe structure to the Camden County Construction Board of Appeals.

61. Evidence was presented to the Defendant, Camden County Construction Board of Appeals, on the issue of whether Plaintiff's structure was unsafe.

62. The Camden County Construction Board of Appeals found the Plaintiff's structure was not unsafe.

63. Defendant, Camden County Construction board of Appeals, upon finding Plaintiff's structure was not unsafe, required that Plaintiff conduct additional tests to determine whether the structure was safe.

64. Defendant, Camden County Construction Board of Appeal's requirement that Plaintiff conduct additional tests without basis in law or fact was arbitrary, capricious and unreasonable.

65. Defendant, Camden County Construction Board of Appeals, in its November 15, 2018 decision also entered an Order with respect to an allegation that work had been done without a permit.

66. No issue before the Defendant, Camden County Construction Board of Appeals, included a question of whether Plaintiff had performed work without a permit, and Plaintiff had no notice that said issue would be presented to and/or decided by Defendant, Camden County Construction Board of Appeals.

67. Said decision of the Defendant, Camden County Construction Board of Appeals, was issued without the benefit of due process, and was arbitrary, capricious and unreasonable.

WHEREFORE, Plaintiff demands judgment against the Defendant, Camden County Construction Board of Appeals, as follows:

A. Reversing the decision of Defendant, Camden County Construction Board of Appeals, requiring additional testing of the structure;
B. Reversing the decision of the Defendant, Camden County Construction Board of Appeals, that Plaintiff performed work on the structure without a permit in

11

violation of the Uniform Construction Code;

C.  For reasonable costs and counsel fees; and

D.  For such other and further relief as the Court may deem just and equitable.

## COUNT II
## PREROGATIVE WRIT AGAINST DEFENDANT,
## CAMDEN COUNTY CONSTRUCTION BOARD OF APPEALS

68. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

69. Plaintiff's appeal to the Camden County Construction Board of Appeals from V-19-005 and V-19-006 is stayed pending resolution of the pending action.

70. V-19-005 and V-19-006 are nullified because the November 2018 decision of the Defendant, Camden County Construction Board of Appeals, is a nullity for the reasons set for the in Count I.

WHEREFORE, Plaintiff demands judgment against Defendant, Camden County Construction Board of Appeals, as follows:

A.  Ordering Defendant, Camden County Construction Board of Appeals, to dismiss V-19-005 and V-19-006;

B.  For reasonable counsel fees and costs; and

C.  For such other and further relief as the Court may deem just and equitable.

## COUNT III
## AGAINST DEFENDANTS, CHERRY HILL TOWNSHIP,
## CHARLES CAHN, FREDERICK KUHN AND WILLIAM CATTELL
## FOR VIOLATION OF CIVIL RIGHTS

71. Plaintiff brings this cause of action under N.J.S.A. 10:6-2(c) of the New Jersey Civil Rights Act.

72. The unwarranted entries into Plaintiff's home, and the entries with warrants which were supported by false affidavits, constitute violations of Plaintiff's rights under the Constitutions or laws of the State of New Jersey in violation of N.J.S.A. 10:6-2.

WHEREFORE, Plaintiff demands judgment against Defendants, Cherry Hill Township, Charles Cahn, William Cattell and Frederick Kuhn as follows:

12

A.  For compensatory and consequential damages;
B.  For punitive damages
C.  For Civil Penalty pursuant to N.J.S.A. 10:6-2(c);
D.  For reasonable counsel fees and costs; and
E.  For such other and further relief as the Court may deem just and equitable.

## COUNT IV
## AGAINST DEFENDANT, CHARLES CAHN
## FOR VIOLATION OF CIVIL RIGHTS

73. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

74. Defendant, Charles Cahn, under Color of Law, has engaged in a series of acts intended to harass Plaintiff through use of threats, intimidation and coercion which have deprived Plaintiff of privileges and substantive rights secured by the Constitutions or laws of the United States and State of New Jersey or otherwise interfered with said rights and privileges in violation of N.J.S.A. 10:6-2.

WHEREFORE, Plaintiff demands judgment against Defendant, Charles Cahn, as follows:

A.  For compensatory and consequential damages;
B.  For punitive damages
C.  For Civil Penalty pursuant to N.J.S.A. 10:6-2(c);
D.  For reasonable counsel fees and costs; and
E.  For such other and further relief as the Court may deem just and equitable.

## COUNT V
## LAW AGAINST DISCRIMINATION AGAINST DEFENDANT,
## CHERRY HILL TOWNSHIP

75. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

76. Defendants have conducted a campaign as previously described of discriminating against Plaintiff on account of her race in violation of N.J.S.A. 10:5-1, et seq. and the New Jersey Constitution, Art, 1, Para. V.

WHEREFORE, Plaintiff demands judgment against Defendant, Cherry Hill Township, as follows:

13

A. For compensatory and consequential damages;
B. For punitive damages
C. For reasonable counsel fees and costs; and
D. For such other and further relief as the Court may deem just and equitable.

## COUNT VI
## LAW AGAINST DISCRIMINATION AGAINST DEFENDANT CATTELL

77. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

78. Defendants have conducted a campaign as previously described of discriminating against Plaintiff on account of her race in violation of N.J.S.A. 10:5-1, et seq. and the New Jersey Constitution, Art, 1, Para. V.

79. Defendant Cattell's conduct in violation of the New Jersey Law Against Discrimination includes:

a) Denying Plaintiff a renewal of her building permit;
b) Changing the requirements for Plaintiff's renewal of her building permit;
c) Submitting false and unsupported legal proceedings such as Notices of Violation, applications for search warrants and seeking an Order permitting the demolition of Plaintiff's home, all in order to interfere with the construction of her home because of her race.

WHEREFORE, Plaintiff demands judgment against Defendant, William Cattell, as follows:

A. For compensatory and consequential damages;
B. For punitive damages
C. For reasonable counsel fees and costs; and
D. For such other and further relief as the Court may deem just and equitable

## COUNT VII
## LAW AGAINST DISCRIMINATION AGAINST DEFENDANT KUHN

80. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

14

81. Defendants have conducted a campaign as previously described of discriminating against Plaintiff on account of her race in violation of N.J.S.A. 10:5-1, et seq. and the New Jersey Constitution, Art, 1, Para. V.

82. Defendant Kuhn's conduct in violation of the New Jersey Law Against Discrimination includes:

 a) Denying Plaintiff a renewal of her building permit;
 b) Changing the requirements for Plaintiff's renewal of her building permit;
 c) Submitting false and unsupported legal proceedings such as Notices of Violation, applications for search warrants and seeking an Order permitting the demolition of Plaintiff's home.

WHEREFORE, Plaintiff demands judgment against Defendant, Frederick Kuhn, as follows:

 A. For compensatory and consequential damages;
 B. For punitive damages
 C. For reasonable counsel fees and costs; and
 D. For such other and further relief as the Court may deem just and equitable

## COUNT VIII
## LAW AGAINST DISCRIMINATION AGAINST DEFENDANT CHARLES CAHN

83. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

84. Defendants have conducted a campaign as previously described of discriminating against Plaintiff on account of her race in violation of N.J.S.A. 10:5-1, et seq. and the New Jersey Constitution, Art, 1, Para. V.

85. Defendant Cahn's conduct in violation of the New Jersey Law Against Discrimination includes:

 a) Directing Defendants Cattell and Kuhn to engage in the conduct described above;
 b) Harassing and directing the harassment of Plaintiff and the construction of her home by:
    i) Making false representations of Plaintiff's character to her neighbors and contractors; and
    ii) Conducting and/or ordering surveillance of Plaintiff, members of her family and contractors.

15

WHEREFORE, Plaintiff demands judgment against Defendant, Charles Cahn, as follows:

A. For compensatory and consequential damages;
B. For punitive damages
C. For reasonable counsel fees and costs; and
D. For such other and further relief as the Court may deem just and equitable.

## JURY DEMAND

Plaintiff, Denise Williams, hereby demands a trial by jury as to all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Thomas D. Flinn, Esq. is hereby designated as trial counsel for Plaintiff, Denise Williams in connection with the above matter.

GARRITY, GRAHAM, MURPHY,
GAROFALO & FLINN, P.C.
Attorneys for Plaintiff

Dated: June 3, 2021                    BY: /s/ *Thomas D. Flinn*
                                          THOMAS D. FLINN

16

## RULE 4:5-1 CERTIFICATION

I hereby certify in accordance with R. 4:5-1 that to the best of my knowledge there are no other pending cases or other proceedings in the Superior Court of New Jersey, except A-001131-19T1 which is an appeal from a civil penalty for failure to renew an expired construction permit, and which the undersigned believes is presently pending, and that there are no other parties known that should be joined in this action.

GARRITY, GRAHAM, MURPHY,
GAROFALO & FLINN, P.C.
Attorneys for Plaintiff

Dated: June 3, 2021                    BY: /s/ Thomas D. Flinn
                                            THOMAS D. FLINN

## CERTIFICATION PURSUANT TO R. 1:38-7

Pursuant to R. 1:38-7(b), I hereby certify that all confidential personal identifies, if any, have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

GARRITY GRAHAM MURPHY
GAROFALO & FLINN, P.C.
Attorneys for Plaintiff

By: /s/ Thomas D. Flinn
        THOMAS D. FLINN

Dated: June 3, 2021

17

## **VERIFICATION**

DENISE WILLIAMS, of full age, hereby certifies as follows:

1.   I am the Plaintiff in the above-entitled matter.

2.   I have read the Third Amended Verified Complaint and verify that the facts set forth therein are true to the best of my knowledge, information and belief and the said Complaint is made in truth and good faith for the causes set forth therein.

3.   I certify that the above statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: 6/3/2021

_____
Denise Williams

# EXHIBIT 5

**FOX ROTHSCHILD LLP**
Formed in the Commonwealth of Pennsylvania
Corinne McCann Trainor, Esq. (039102007)
Michael W. Sabo, Esq. (306252019)
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
Telephone: 609-844-3038
Facsimile: 609-896-1469
*Attorneys for Plaintiff*
*Denise Williams*

| | |
|---|---|
| DENISE WILLIAMS,<br><br>           *Plaintiff,*<br><br>   v.<br><br>TOWNSHIP OF CHERRY HILL; THE CAMDEN COUNTY CONSTRUCTION BOARD OF APPEALS; WILLIAM CATTELL; FREDERICK KUHN; WILLIAM F. COOK; BRANDON HAWKINS; CHARLES CAHN; YANNUZZI GROUP, INC., SUSAN SHIN ANGULO, and ABC CORPS. 1-10<br><br>           *Defendants.* | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION-CAMDEN COUNTY<br><br>DOCKET NOS. CAM-L-769-19<br>CAM-L-183-22<br>CAM-L-2359-22<br>(CONSOLIDATED)<br><br>**PROPOSED ORDER** |

**THIS MATTER** having come before the Court by application of Plaintiff Denise Williams

("Plaintiff") by way of her Motion for leave to amend; and the Court having considered said

Motion and the proofs and arguments submitted in support thereof and in opposition thereto; and

for good cause shown;

   **IT   IS   on   this   17   day   of   March                   ,   2023.**

**ORDERED** that Plaintiff's Motion be and the same is hereby **GRANTED**; and it is further;

**ORDERED** that Plaintiff shall file and serve the Fourth Amended Complaint in the form attached as **Exhibit A** to the Certification of Corinne McCann Trainor within ten (10) days of entry of this Order; and it is further;

**ORDERED** that this Order shall be served upon all parties who have not been electronically served through an approved Electronic Court System pursuant to Rule 1:32-2A, nor served personally in Court, as required pursuant to New Jersey law.

_____

HON. DANIEL A. BERNARDIN, J.S.C.

"Reasons set forth On the Record"

# 44;  3/17/23

2

# EXHIBIT 6

**FOX ROTHSCHILD LLP**
**Formed in the Commonwealth of Pennsylvania**
Corinne McCann Trainor, Esq. (039102007)
Michael W. Sabo, Esq. (306252019)
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
Telephone: 609-844-3038
Facsimile: 609-896-1469
*Attorneys for Plaintiff*
*Denise Williams*

| | |
|---|---|
| DENISE WILLIAMS,<br><br>    *Plaintiff*,<br><br>  *v.*<br><br>TOWNSHIP OF CHERRY HILL; THE CAMDEN COUNTY CONSTRUCTION BOARD OF APPEALS; WILLIAM CATTELL; FREDERICK KUHN; WILLIAM F. COOK; BRANDON HAWKINS; CHARLES CAHN; YANNUZZI GROUP, INC., SUSAN SHIN ANGULO, and ABC CORPS. 1-10<br><br>    *Defendants*. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION-CAMDEN COUNTY<br><br>DOCKET NOS. CAM-L-769-19<br>CAM-L-183-22<br>CAM-L-2359-22<br>(CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br>**FOURTH AMENDED COMPLAINT** |

Plaintiff Denise Williams ("Ms. Williams") brings this Fourth Amended Complaint against

the Township of Cherry Hill, the Camden County Construction Board of Appeals, William Cattell,

Charles Cahn, Frederick Kuhn, William F. Cook, Brandon Hawkins, Susan Shin Angulo, and

Yannuzzi Group, Inc. (collectively the "Defendants") and alleges as follows:

**INTRODUCTION**

1. This case involves the outrageous, bad faith, conscience-shocking campaign of the Township of Cherry Hill and its officials and agents against their own resident Plaintiff Denise Williams, that Defendants undertook in total disregard of Plaintiff's civil and constitutional rights and in willful violation of New Jersey law.

2. Plaintiff Ms. Williams owns real property in the Township of Cherry Hill located at 1138 Winding Drive, Cherry Hill, Camden County, New Jersey 08003, where she was building her dream home (the "Property"). Despite her significant efforts to ensure the safety of the mid-construction home and to submit applications to secure permits to proceed with construction, Defendants refused to help Plaintiff with her efforts or to consider her applications. Instead, in the pre-dawn hours of Thursday, January 26, 2023, Defendants unilaterally and without the Court's permission, entered Plaintiff's Property and demolished her home. Defendants demolished the structure on the Property despite Defendant Kuhn's admission to Mr. Cook on August 25, 2022 that demolition should proceed "not due to an imminent hazard."

3. Indeed, over the course of several years, Defendants engaged in an official course of conduct, policy custom and practice of unlawful conduct and improper targeting of Plaintiff Denise Williams and the Property, in an attempt to force Ms. Williams into abandoning and/or selling the Property and ultimately, into leaving the Township.

4. At every turn, the Court has refused to give Defendants permission to demolish Plaintiff's home, most recently denying Defendants' application for permission on April 29, 2022. With respect to each and every judicial determination on the subject, the Court concluded that Plaintiff had not abandoned her Property and that there was no evidence to support Defendants' oft-repeated allegation that the Property presented a safety concern. To the contrary, Plaintiff maintained the structural integrity of the building, had a locked fence around the Property, and a

2

security detail guarded it, as well. Despite their failure after multiple attempts to secure the requisite judicial permission to demolish Plaintiff's Property—which Plaintiff spent significant sums of time and money to construct—on or about July 7, 2022, Defendants issued a substantively and procedurally deficient demolition order (the "Email Notice"). Before any evidential hearing or order of the Court granting permission to demolish the Property, and during the midst of briefing with respect to Plaintiff's emergent application that she filed with the Court challenging the lawfulness of the Email Notice, Defendants began demolishing Plaintiff's dream home in the pre-dawn hours of January 26, 2023, while the Court's October 2, 2019 and April 29, 2022 Orders remained in full effect and undisturbed.

5. Plaintiff is entitled to damages, the vacatur of improvidently entered liens, encumbrances and assessed penalties, and declaratory relief arising from Defendants' willful and wanton, unlawful and bad faith conduct.

## JURISDICTION AND VENUE

6. This Court has jurisdiction as the above-captioned matter involves a complaint in lieu of prerogative writs within its statutory authority to resolve. This Court also has jurisdiction as the above-captioned matter involves unlawful conduct by New Jersey citizens in New Jersey.

7. Venue is properly laid given that Camden County is the situs for the Property and the related claims at issue in the above-captioned action.

## PARTIES

8. Plaintiff Denise Williams is an individual who owns real property located at 1138 Winding Drive Cherry Hill, New Jersey 08003. Ms. Williams also has a mailing address listed at P.O. Box 3625, Cherry Hill, New Jersey 08034.

9.  Defendant Township of Cherry Hill is a municipal corporation and corporate body politic organized pursuant to the Constitution and laws of Camden County, located in the State of New Jersey, with offices located at 820 Mercer Street, Cherry Hill, New Jersey, 08002.

10.  Defendant Camden County Construction Board of Appeals is a county governing body established pursuant to N.J.A.C. 5:23A-2.1 et seq. with the authority to review rulings, actions, notices, orders, or decisions of a local enforcing agency that enforces the New Jersey Uniform Construction Code with offices located at 520 Market Street, 14th Floor, Camden, NJ 08102.

11.  Defendant William Cattell is the former Construction Code Official of the Township of Cherry Hill, and at all relevant times, exercised supervisory control over all construction matters, including the issuance of demolition orders under the Uniform Construction Code and New Jersey law. Defendant Cattell is a citizen of the State of New Jersey represented by Mr. William F. Cook, Esq., with offices at 820 Mercer Street Room 205, the Township of Cherry Hill, New Jersey 08002. At all relevant times, Defendant Cattell was acting under color of state law and under the supervision of Defendants.

12.  Defendant Frederick Kuhn is the Construction Official of the Township of Cherry Hill, and a citizen of the State of New Jersey and an employee of Cherry Hill, with offices at 820 Mercer Street Room 205, Cherry Hill, New Jersey 08002. At all relevant times, Defendant Kuhn was acting under color of state law and under the supervision of Defendants.

13.  Defendant William F. Cook, Esq. is the current special litigation counsel for Defendants and is a citizen of the State of New Jersey, with offices at Brown and Connery, LLP, 360 Haddon Avenue, Westmont, NJ 08108. At all relevant times, Defendant Cook was acting under color of state law and under the supervision of Defendants.

4

14.     Defendant Brandon Hawkins, Esq. is the current Assistant County Counsel for the County of Camden and counsel for the Defendant, Camden County Construction Board of Appeals. At all relevant times, Defendant Hawkins was acting under color of state law and under the supervision of Defendants.

15.     Defendant Charles Cahn is the former Mayor of the Township of Cherry Hill, is a citizen of the State of New Jersey and at all relevant times was an elected official of Cherry Hill, with offices at 820 Mercer Street Room 205, Cherry Hill, New Jersey 08002. At all relevant times, Defendant Cahn was acting under color of state law.

16.     Defendant Yannuzzi Group, Inc. is a demolition company with a corporate headquarters located at 135 Kennelon Road, Kinnelon, NJ 07405. At all relevant times, Defendant Yannuzzi Group, Inc. acted as Defendants' and the Township's agent.

17.     Defendant Susan Shin Angulo is the current Mayor of the Township of Cherry Hill, is a citizen of the State of New Jersey and at all relevant times was an elected official of Cherry Hill, with offices at 820 Mercer Street Room 205, Cherry Hill, New Jersey 08002. At all relevant times, Defendant Angulo was acting under color of state law.

## FACTUAL ALLEGATIONS

**A.     Plaintiff Obtains Building Permits to Build her Dream Home.**

18.     Plaintiff Denise Williams owns real property located at 1138 Winding Drive Cherry Hill, New Jersey 08003. In March 2009, Plaintiff obtained a building permit to construct her dream home in the Township of Cherry Hill. The permit listed an expiration date for 2012 but was extended until December 31, 2015 pursuant to the Permit Extension Act, N.J.S.A. 2A:58-10 to -12.

19.     To date, Plaintiff has expended tremendous sums of money to improve the Property and on excavation, architecture fees, engineering fees, construction costs and other costs.

5

20.     Prior to its unlawful demolition, the Plaintiff had constructed a fully formed concrete basement, framed exterior, subflooring throughout the structure, and a complete roof on the Property.

21.     In 2013, Plaintiff complained to the Township of Cherry Hill police because Mr. Cahn and another neighbor and friend of Mayor Cahn, Mr. Stern, approached Plaintiff's contractors. According to the contractors on location at the Property, Mr. Cahn falsely told them that Plaintiff would not pay them for their work. This incident is one in a years-long course of conduct where neighbors and Township officials conspired to destroy the structure at the Property and drive Plaintiff out of the Township.

22.     In or about April 2017, Defendants, through Defendant Cattell as Construction Official, issued a Notice of Violation for failure to renew the permit that he later abated on June 22, 2017.

23.     On June 22, 2017, Construction Official Cattell issued a "Notification of Abatement" for purported prior UCC violations. The "Notification of Abatement" stated that Plaintiff "has conformed with the requirements" of the UCC and the notification "terminat[ed] all violations as stated above." In other words, Defendants determined that Plaintiff should be permitted to move forward, and she had cured the issues raised by the Township. Since late 2017, Plaintiff has made good faith attempts to secure necessary permits by submitting applications for them, but Defendants denied every single one of them. Plaintiff and Construction Official Cattell reached an understanding that the Township would issue interior permits thereafter, but this never occurred. Instead the Township contacted the local utility supply companies to disconnect services to the Property. These actions and the actions detailed herein represent the Defendants unlawful campaign to target Plaintiff and the Property that continues to today.

6

24.     Since the expiration of Plaintiff's initial work permit, every permit that she has applied for has been denied, except for a permit to work on the exterior of her home, which was granted on November 30, 2017.

**B.      The Camden County Construction Board of Appeals Concludes that the Property is Safe, and Plaintiff Takes Reasonable Measures to Ensure the Structure at the Property is Sound.**

25.     In or about July 2017, Plaintiff engaged in multiple meetings and conversations with the Cherry Hill Construction Official (Mr. Cattell) for the purpose of submitting an application to renew the building permit.

26.     Defendants (by and through Defendant Brandon Hawkins, Esq.) issued a notice of penalty in October 2017 despite Defendants having issued an abatement notice and despite knowing that Plaintiff was working with Cattell and actively seeking appropriate permits.

27.     By November 2017, Plaintiff had submitted a complete application for the renewal of the building permit.

28.     The application Plaintiff ultimately submitted in November 2017 came after months of discussions among the parties. In December 2017, Defendant Cattell as Construction Official deemed Plaintiff's application to be complete.

29.     Thereafter, Defendant Cattell issued a building permit for the exterior of the building.

30.     Throughout 2018, Plaintiff continued her efforts to complete her dream home on the Property only to be repeatedly stymied by the Township and Defendants. Defendants ultimately issued another notice of violation in 2018 in an unlawful attempt to block Plaintiff from proceeding with construction.

31.     On November 7, 2018, the Camden County Construction Board of Appeals (the "Board") met at a regularly scheduled meeting to determine the validity of the initial Notice of

7

Violation and Stop Construction Order, Notice of Unsafe Structure and Notice and Order of Penalty. In a written decision, the Board concluded "that the structure [was] safe at the present time, and that further tests are needed to determine the extent of any water damage and deterioration of the structural wood members[.]" In other words, the Board found in favor of Plaintiff and found that, despite the orders issued by the Township and its repeated improper denials of work permits requested by Plaintiff, the structure on the Property was safe.

32.     Plaintiff also hired a licensed engineer, Lawrence Brooks, to inspect the Property on September 24, 2018. Mr. Brooks found no structural issues at the Property. In response to the Board's request, Plaintiff had the Property re-inspected on August 23, 2019. Again, an independent engineer found the Property to be safe and structurally sound. Unfortunately, the Township still refused to grant Plaintiff a work permit to enable her to complete the construction of her home.

33.     Beginning no later than in or about 2018, Defendants and their agents repeatedly entered Plaintiff's property with the intention of fabricating allegations that the structure was unsafe. In so doing, Defendants violated her statutory and constitutional rights, unlawfully withheld an accounting of thousands of dollars in escrow funds, and assessed penalties, fines, and liens unlawfully.

34.     In June 2019, Brandon Hawkins, and then-Township Solicitor Robert Wright, Jr. filed an application for an Order to Show Cause and a Complaint in Lieu of Prerogative Writs, captioned CAM-L-2436-19 where the Township sought permission to demolish the Property.

35.     At a hearing on October 2, 2019, Judge Kassel rejected Defendants' attempt to demolish the Property. Specifically, he stated that "[t]earing down otherwise viable property because it's not constructed in time seems to me to be a <u>Draconian remedy</u> in this situation." (emphasis added). Judge Kassel also declined to enter Mr. Hawkins' handwritten "Civil Action

8

Order," which would have required the Township's request to be "presumptively" granted and "may be rebutted by" Plaintiff. There was no legal basis for Mr. Hawkins to put the burden on Plaintiff to rebut Defendants' unlawful attempt to "presumptively" lawful permit demolition.

**C.      Plaintiff Retains the O'Toole Scrivo Law Firm to Fight Back Against the Township, and the Court Rejects Defendants' Repeated Attempts to Demolish the Property and Finds the Property to be Safe and Not Abandoned.**

36.      Defendants spent years desperately trying to demolish the structure at the Property to no avail. Each and every time Defendants sought explicit authority to do so, the Court rejected their applications. In furtherance of the conspiracy to target Plaintiff and the Property, in January 2022, the Township deceptively withheld a payment regarding a fine that the Court later acknowledged she timely paid, only for Defendants to file a Complaint in Lieu of Prerogative Writs against Plaintiff.

37.      Indeed, in January 2022, Brandon Hawkins Esq., on behalf of the Township of Cherry Hill, filed yet another Complaint in Lieu of Prerogative Writs against Plaintiff and an Order to Show Cause, to, among other things, seek an "Order authorizing the Township of Cherry Hill to demolish the structure at 1138 Winding Drive, Cherry Hill, New Jersey pursuant to N.J.A.C. 5:23-2.16(f)." Mr. Hawkins filed this action without any legal basis and to obtain court-permission for demolition of the Property. In response, Plaintiff retained the Firm O'Toole Scrivo to vindicate her statutory and constitutional rights.

38.      In support of the Township's Order to Show Cause application, Mr. Hawkins provided a certification dated April 26, 2022 based on his purported "personal knowledge of the facts." In the certification, Mr. Hawkins listed twenty-seven (27) purported "deficiencies" with Plaintiff's permit application dating back to 2015. Mr. Hawkins made alleged "findings of fact," for example, "The electrical design did not contain a single line diagram for the 800 Ampere Service," and conclusions of law, for example, Plaintiff "failed to provide two sets of plans from

9

the manufacturers truss drawings in accordance with UCC 5:23-2.15(f)." Mr. Hawkins' certification was improper fact and expert witness testimony, and his filing of a certification in this case converted him from counsel to an apparent fact and expert witness. Mr. Hawkins filed the certification to further the conspiracy among himself, Mr. Cahn, Mr. Cook, Mr. Kuhn, Mayor Angulo, and other Defendants as part of the Township of Cherry Hill's policy, custom, practice, and course of conduct to unlawfully demolish the Property in violation of Plaintiff's rights.

39. On April 29, 2022, the Honorable Mark Kassel, J.S.C., heard oral argument based on the Township's unlawful attempt to secure the Court's permission to demolish the Property based on N.J.A.C. 5:23-2.16(f) and N.J.S.A. 52:27D-131(d). At the hearing, Judge Kassel stated that it was not "100 percent clear" whether Defendants had the authority to proceed with demolition. After oral argument, the Court sided with Plaintiff and denied the Township's "request for a court order that allows them to destroy" the structure and granted Plaintiff's cross-motion to dismiss because the Township could not move to demolish an incomplete structure in a summary hearing pursuant to Rule 4:67-1(a).

40. In his April 29, 2022 denial of the application for an order permitting the Township to demolish the Property, Judge Kassel concluded that "I don't think [Plaintiff] abandoned the property," and that the Township had not set forth facts as to safety issues and was "not alleging that the structure, . . . represents any type of danger."

41. By order dated April 29, 2022, Judge Kassel explicitly rejected Mr. Hawkins and the Township's invented safety concerns, and the Court refused to grant the Township permission to demolish the Property.

**D.  Defendants Ignore Plaintiff's Numerous Good Faith Attempts to Cure the Purported "Deficiencies" in Her Application.**

42.  Before and after Judge Kassel denied Defendants' request for a court order permitting demolition of the Property, Plaintiff undertook a course of conduct to cure any alleged deficiencies in her permits and construction papers.

43.  In one instance, two months later, on June 27, 2022, Plaintiff spoke with Defendant Mr. Kuhn, the current Township Construction Code official, and informed him that she would personally submit the subcode applications for electric, plumbing, building mechanical, and fire protection the next day.

44.  Plaintiff also advised Mr. Kuhn that she was in the process of renewing the septic removal and Camden County Soil Conservation permits.

45.  At all relevant times, Plaintiff relied upon the duly issued building permits to obtain financing for interior construction of the Property, the construction work itself, and other preparations for Plaintiff to inhabit the Property.

46.  On or about June 27, 2022, Plaintiff submitted her applications as promised. On June 29, 2022, she also called Mr. Kuhn but was told he was on the road and her papers had been delivered. Plaintiff and her electrician follow up after not hearing back from the Township. Rather than leave the office, Plaintiff and her electrician reviewed her application papers with Mr. Kuhn's assistant. Mr. Kuhn's assistant indicated that she would secure Mr. Kuhn's signature and the electric sub-code officer's signatures by Friday, July 8, 2022 so that construction could proceed.

**E.  The Township Issues Deficient Email Notice Instead of Reviewing Plaintiff's Application Papers and Admits Behind the Scenes that Demolition Must Proceed Even Though No "Imminent Hazard" Existed.**

47.  The representations that Mr. Kuhn made to Plaintiff were false and misleading. Mr. Kuhn made false and misleading representations at the behest of Mr. Cook, Mr. Hawkins, Mayor

11

Angulo, and other Defendants in a concerted effort to unlawfully demolish the Property and drive Plaintiff out of the Township of Cherry Hill.

48.     In fact, on or about June 25, 2022, the Cherry Hill Council (at Mr. Cook, Mr. Hawkins and Mayor Angulo's request) approved a Resolution authorizing the Construction Official, Mr. Kuhn, to issue an order of demolition for the Property, "upon the advice of Special Litigation Counsel," William Cook, who directed the Township Council "that in view of a ruling dated April 29, 2022 by the Superior Court . . . no Court Order is required, assuming that the preconditions for demolition are met and a Demolition Order by the Construction Official, is appropriately issued . . ."  Of course, there is nothing in the April 29, 2022 Order that authorized the demolition of the Property. Quite to the contrary, the April 29, 2022 Order prohibited the demolition of the Property. Importantly, the Council only authorized such action with the following condition: "This Resolution is adopted in a manner requiring both Special Litigation Counsel and the Construction Official to take any and all actions to protect the procedural and substantive rights of all parties identified herein."  As detailed herein, Defendants—including Mr. Cook, Mr. Hawkins, and Mayor Angulo, failed to protect Plaintiff's procedural and substantive rights.

49.     Instead of providing any update or response to Plaintiff's June 27 and 29, 2022 communications, Mr. Kuhn, on behalf of the Township and Defendants, sent Plaintiff an email on July 8, 2022, which included an attachment titled "Order to Demolish the Structure." Both the denial and the demolition "order" or Email Notice were dated July 7, 2022.

50.     Pursuant to the Township Municipal Code Section 15-9.2, all notices of violation must, among other things, include "a correction order allowing a reasonable time for repairs and improvements required to bring the dwelling unit, structure or premises into compliance with the

provisions of this Code." All notices must also "state a specific time for compliance." The Email Notice contained neither a correction order with a time whereby Plaintiff could cure alleged "violations," nor a tabulation of penalties purportedly incurred.

51.     The document purportedly sent to Plaintiff simply "ordered [her] to demolish the structure by July 29, 2022" because this project was not completed by "the deadline set forth in the NJ Uniform Construction Code." The email and attachment did not cite to the Township's Property Maintenance Regulations and did not comport with Township Ordinance Section 15-9.2 or 15-23.2. The Email Notice also did not include a "reasonable time for repairs and improvements" or a "specific time for compliance." No time for compliance was provided at all.

52.     The Email Notice also violated state law, including but not limited to N.J.A.C. 5:23-2.30(b), because it did not order Plaintiff "to terminate violations within a time specified in the order" or list "the amount of penalty assessed."[1]

53.     An opportunity to correct must be included in any such notice as provided by N.J.A.C. 5:23-2.30(b)(2) that states: "unless an immediate hazard to health and safety is posed, the construction official shall permit such time period for correction as is reasonable within the context of the situation;" N.J.A.C. 5:23-2.30(b)(2). See also N.J.A.C. 5;23-2.30(a) (stating that code officer "shall issue a notice of violation and orders to terminate directing the discontinuance of the illegal action or condition and the correction of the violation").

---

[1] Upon information and belief, the Township also violated N.J.A.C. 5:23-2.16A(a)(1)-(9), which requires the Construction Official to retain and preserve: (1) construction applications; (2) permits; (3) permit updates; (4) decisions on applications for variations; (5) decisions of the Construction Board of Appeals; (6) Certificates of occupancy; (7) elevator inspections; (8) the ongoing inspection control card; and (9) notices of unsafe structure "for the life of the building or structure"—here January 26, 2023.

13

54.     A mandatory right of appeal is provided by N.J.S.A. 52:27D-127 (b) in connection with any demolition or other order under the construction code. Specifically, N.J.S.A 52:27D-127(b) provides that the property owner has a right of appeal to the county construction board of appeals when a municipality, enforcing agency or official "refuses to act upon application for a construction permit, or when the enforcing agency makes any *other* decision, pursuant or related to this act or the code." N.J.S.A. 52:27D-127 (b) [emphasis added]."

55.     Despite this provision, the Email Notice did not mention a right of appeal or serve Plaintiff with a summons or a complaint that scheduled a hearing at which time she could raise the issue of whether the order to demolish her home by July 29, 2022 was valid, appropriate, and authorized by state law.

56.     Prior the Township's arbitrary and improper July 29, 2022 demolition deadline, on July 28, 2022, Plaintiff's project manager, Mr. Jablonski, filed a set of revised construction papers in a good faith effort to cure issues raised by the Township as the basis for the denial of the permit applications a month earlier.[2]

57.     To proceed with the unlawful demolition, on or about August 15, 2022, the Council passed a Resolution to award a contract for the demolition and removal of Plaintiff's home to the Yannuzzi Group, Inc., located at 135 Kinnelon Road, Ste. 102, Kinnelon, NJ 07405, in an amount

---

[2] Although unnecessary, Mr. Jablonski also filed a new permit application with the zoning officer. The design of Plaintiff's residential home has not changed, and on information and belief, the zoning ordinances applicable to the Property have not changed since she secured her original zoning permit and applied for zoning permits in 2019. On August 9, 2022, Plaintiff received a denial of her zoning permit, and for the first time, the Township claimed that Plaintiff's project requires a (d)(6) variance for height (though the height of the structure was previously approved by the Township Zoning officer). The denial of the unnecessary zoning permit, the subsequent refusal to answer Plaintiff's OPRA requests, and the Township's refusal to take any action on the application permits submitted by Mr. Jablonski evidence a course of conduct, custom, practice, and policy of bad faith and unlawful conduct by the Township.

14

not to exceed $149,000.  The Resolution specifically provided that "the Township Controller has certified that sufficient and legally appropriated funds will be available pending the successful passage and adoption of the FYE2023 Construction Code . . ." and further, that "the Mayor or designee is authorized to execute such documents consistent with this Resolution and to take such other action on behalf of the Township in furtherance of this Resolution."

58.     Just ten (10) days later, on August 25, 2022, Defendant Kuhn admitted to Mr. Cook (the Township special litigation counsel) that "Demolition is warranted . . . [but] not due to an imminent hazard." (emphasis added). Mr. Kuhn's admission to Mr. Cook (made one month after the Township issued the Email Notice) confirms that there never was a bona fide safety concern sufficient to justify demolition (in conflict with Defendants' publicly stated position)—the Township acted unlawfully to force Plaintiff to sell and/or abandon the Property. Instead, Defendants were intent to demolish Plaintiff's home to cap an end to their campaign against her.

**F.     Plaintiff Seeks Injunctive Relief to Stop the Township's Demolition Ambitions.**

59.     To protect her investment in the Property and vindicate her constitutional rights, Plaintiff sought injunctive relief to block the Township from proceeding with demolition. In August 2022, Judge Kassel decided to "continue the restraints" from prior orders.

60.     Judge Kassel therefore again stymied the Township's repeated, unlawful attempts to demolish the Property. One month later, Judge Kassel stayed and enjoined the Township from executing on the demolition "order" until thirty (30) calendar days after disposition of the matter on appeal. By order dated December 1, 2022, the Appellate Division denied Plaintiff's motion for leave to appeal.

61.     Sensing the Township's desire to imminently destroy the Property, Plaintiff sought further injunctive relief to stop the demolition. On December 21, 2022, Judge Kassel entered an order requiring the parties to "show cause" why the Court should not adjudge and declare that "the

15

order of demolition of the Property is deficient and violates the Township's Property Maintenance Regulations, and State Law" among other relief.

62.     At no point during the briefing on the Order to Show Cause, either before the trial court or the Appellate Division, did Defendants inform the Court that they had every intention to move forward with demolition, notwithstanding any order of the Court, including those entered on October 2, 2019 and April 29, 2022.

**G.     The Township Demolishes Plaintiff's Safe and Unabandoned Property During the Pendency of the Order to Show Cause Briefing Schedule.**

63.     At all relevant times, Plaintiff employed a security team that maintained the safety of the Property.

64.     In furtherance of their willful misconduct, on January 18, 2023, Mr. Cook, on behalf of the Township and Defendants, wrote to the Court that "My clients must request a case management conference at the Court's earliest convenience to address certain safety concerns that have developed at the subject property."  There was not then and there has never been any basis in fact or in law for Mr. Cook's representation or to reasonably conclude that there was ever a "safety" issue at the Property.  Instead, Defendants' contention was contrived and presented in furtherance of the Defendants' willful misconduct and outrageous, purposeful intent to demolish the Property notwithstanding the Court's Orders denying permission to do so.  No case management conference was ever convened prior to the Defendants' wrongful demolition.

65.     Mr. Cook's January 18, 2023 letter acknowledged Plaintiff's "right to contest the legality of demolition through civil damages" for the Township's unlawful conduct but declared that even though the Order to Show Cause was still pending: "At this time, the Township will be moving forward with demolition of the structure." Mr. Cook again stated that Plaintiff's remedies "are civil damages." In the letter to the Court, Mr. Cook misrepresented the procedural history

16

Case 1:23-cv-01946-KMW-AMD   Document 1   Filed 04/05/23   Page 90 of 118 PageID: 90

involving the Property and incorrectly claimed that the Court permitted the Township to demolish the Property. Not so.

66. Incredibly, despite there being zero support for the misrepresentation that there was a purported "safety" issue, and despite having no approval from the Court to move forward with demolition, and despite there never being any evidentiary hearing to determine whether the Email Order was lawfully issued, the Township's demolition company, the Yannuzzi Group moved forward on behalf of all Defendants and began demolition of the Property in the pre-dawn hours of January 26, 2023. That morning, Defendants entered the Property without permission, directed Plaintiff's security team to step-aside or be arrested, and took these outrageous actions with impunity and disregard of the authority of the Court and the Plaintiff's rights, during the pendency of the Court's December 2, 2022 Order to Show Cause schedule and prior to Plaintiff's deadline to file reply papers. Defendants demolished the Property while Judge Kassel's October 2, 2019 and April 29, 2022 Orders remained in full and lawful effect.

67. The Township's bad faith and unlawful conduct is further evidenced by the fact that during prior proceedings, the Township continued to insist, without evidence, that the structure at the Property was dangerous and unsafe. Neither the Court nor the Camden County Construction Board ever made such a finding and in fact, they repeatedly found the opposite: the structure was safe and not abandoned. Behind the scenes, Defendants recognized the opposite—that they must proceed with the recognition that there was no "imminent hazard."

68. Yet, the Township, its officials, and its agents (former and present) interfered with Plaintiff's property rights; trespassed on, and unlawfully entered the Property; impermissibly detained and/or arrested Plaintiff and her security team; and wrongfully demolished the Property.

17

69.     In so doing, the Township's unlawful conduct deprived Plaintiff of her state and federal constitutional rights as well as hundreds of thousands of dollars in construction costs and investments, along with her counsel fees and costs incurred to prevent the demolition and that will be incurred to vindicate her rights.

70.     Defendants' reliance on N.J.S.A. 52:27D-131(d) is misplaced because the Township's action taken under these circumstances was unlawful. Among other reasons, the Township's action to demolish a safe and not abandoned property was not "appropriate" (as the statute requires) under the circumstances. The Township's course of conduct, custom and municipal practice, including the demolition of the safe and unabandoned property as described herein, deprived Plaintiff of her statutory and constitutional rights.

71.     At the time the Township illegally demolished the Property on January 26, 2023, no factfinder, Court, tribunal, or appellate court ever found that the structure at the Property was either unsafe or abandoned.

72.     In demolishing the Property without proper notice and in the middle of the Order to Show Cause schedule, the Township also violated Property Management Regulation 15-10.2, which requires that the Township "proceed at law or in equity against" Plaintiff for leave to correct or remedy any construction violation.

**H.     The Township's Attorney Falsely States that Plaintiff Never Tried to Present the Township with Necessary Documentation to Approve Construction.**

73.     Worse still, Mr. Cook, Special Litigation Counsel for the Township, and its officials, belatedly appeared for an interview after the demolition on Monday, January 30, 2023. During the interview, Mr. Cook falsely stated on television that there was "no effort by Ms. Williams to present [Cherry Hill] with the necessary documentation that [Cherry Hill] need[s] to

18

approve her construction on this property." The news report also repeated Mr. Cook's willfully false statement that "… the building was unsafe …."

74. Mr. Cook's statement is demonstrably false and belied by Plaintiff and Mr. Jablonski's repeated good faith attempts to work with the Township and cure purported "violations," most recently before and after Defendants issued the July 2022 demolition "order." The Township simply ignored Plaintiff's applications and proceeded with demolition anyway after the Court issued numerous rulings rebuffing Defendants' attempts to move forward.

75. Defendants knowingly, and with actual malice, failed to follow specific orders from the Court and demolished Plaintiff's home without authority. Indeed, the Township Council's June 25, 2022 Resolution expressly directed that Defendants Cook and Kuhn must protect all interested persons' due process rights. But, Defendants had no permission from the Court to demolish the Property, in violation of Plaintiff's rights. Thus, either Defendants Cook and Kuhn and all other Defendants acting in concert with them proceeded without authority, or alternatively, all Defendants acted in concert and with the concealed approval of the Township.

76. As detailed herein, Defendants are guilty of outrageous, willful conduct not immune from the New Jersey Tort Claims Notice Act and other statutory or common law immunity.

77. This year's long ordeal inflicted damages on Plaintiff, including but not limited to, monetary harm, reputational harm and significant legal fees and costs incurred in defending herself from baseless charges.

78. Upon information and belief, the Township has and/or will place a lien on the Property for the costs associated with the demolition, also impermissibly and wrongfully clouding title of the Property.

### CAUSES OF ACTION

### COUNT I
### PREROGATIVE WRIT AGAINST DEFENDANT, CAMDEN COUNTY CONSTRUCTION BOARD OF APPEALS

79. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

80. Plaintiff appealed the Email Notice issued by Defendant, Township of Cherry Hill, and its Construction Code Officials, alleging an unsafe structure to the Camden County Construction Board of Appeals.

81. Evidence was presented to the Defendant, Camden County Construction Board of Appeals, on the issue of whether Plaintiff's structure was unsafe.

82. The Camden County Construction Board of Appeals found the Plaintiff's structure was not unsafe.

83. Defendant, Camden County Construction Board of Appeals, upon finding Plaintiff's structure was not unsafe, required that Plaintiff conduct additional tests to determine whether the structure was safe.

84. Defendant, Camden County Construction Board of Appeal's requirement that Plaintiff conduct additional tests without basis in law or fact was arbitrary, capricious, and unreasonable.

85. Defendant, Camden County Construction Board of Appeals, in its November 15, 2018 decision also entered an Order with respect to an allegation that work had been done without a permit.

86. No issue before the Defendant, Camden County Construction Board of Appeals, included a question of whether Plaintiff had performed work without a permit, and Plaintiff had

20

no notice that said issue would be presented to and/or decided by Defendant, Camden County Construction Board of Appeals.

87.     Said decision of the Defendant, Camden County Construction Board of Appeals, was issued without the benefit of due process, and was arbitrary, capricious, and unreasonable.

88.     As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

## COUNT II
### PREROGATIVE WRIT AGAINST DEFENDANT, CAMDEN COUNTY CONSTRUCTION BOARD OF APPEALS

89.     Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

90.     Plaintiff's appeal to the Camden County Construction Board of Appeals from V-19- 005 and V-19-006 is stayed pending resolution of the pending action.

91.     V-19-005 and V-19-006 are nullified because the November 2018 decision of the Defendant, Camden County Construction Board of Appeals, is a nullity for the reasons set for the in Count I.

92.     As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

## COUNT III
### AGAINST DEFENDANTS, TOWNSHIP OF CHERRY HILL,  CHARLES CAHN, FREDERICK KUHN, AND WILLIAM CATTELL FOR VIOLATION OF CIVIL RIGHTS

93.     Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

94.     Plaintiff brings this cause of action under N.J.S.A. 10:6-2(c) of the New Jersey Civil Rights Act.

21

95.     The unwarranted entries into Plaintiff's home, and the entries with warrants which were supported by false affidavits, constitute violations of Plaintiff's rights under the Constitution or laws of the State of New Jersey in violation of N.J.S.A. 10:6-2.

96.     As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

## COUNT IV
## AGAINST DEFENDANT, CHARLES CAHN FOR VIOLATION OF CIVIL RIGHTS

97.     Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

98.     Defendant, Charles Cahn, under color of law, engaged in a series of acts intended to harass Plaintiff through use of threats, intimidation and coercion which have deprived Plaintiff of privileges and substantive rights secured by the Constitutions or laws of the United States and State of New Jersey or otherwise interfered with said rights and privileges in violation of N.J.S.A. 10:6-2.

99.     As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

## COUNT V
## LAW AGAINST DISCRIMINATION AGAINST DEFENDANT, TOWNSHIP OF CHERRY HILL

100.    Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

101.    As described herein, and by continuing to issue notices of violation despite prior issued Notifications of Abatement in June 2017, Defendants conducted a campaign targeting and discriminating against Plaintiff on account of her race in violation of N.J.S.A. 10:5-1, et seq. and the New Jersey Constitution, Art. 1, Para. V.

102.     As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

<u>COUNT VI</u>
<b>LAW AGAINST DISCRIMINATION AGAINST DEFENDANT CATTELL</b>

103.     Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

104.     As described herein, and by continuing to issue notices of violation despite prior issued Notifications of Abatement in June 2017, Defendants have conducted a campaign as previously described of discriminating against Plaintiff on account of her race in violation of <u>N.J.S.A.</u> 10:5-1, <u>et seq.</u> and the <u>New Jersey Constitution, Art. 1, Para. V.</u>

105.     Defendant Cattell's conduct in violation of the New Jersey Law Against Discrimination includes:

a)     Denying Plaintiff a renewal of her building permit;
b)     Changing the requirements for Plaintiff's renewal of her building permit;
c)     Submitting false and unsupported legal proceedings such as Notices of Violation, applications for search warrants and seeking an Order permitting the demolition of Plaintiff's home, all in order to interfere with the construction of her home because of her race.

106.     As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

<u>COUNT VII</u>
<b>LAW AGAINST DISCRIMINATION AGAINST DEFENDANT KUHN</b>

107.     Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

108.     As described herein, and by continuing to issue notices of violation despite prior issued Notifications of Abatement in June 2017, Defendants have conducted a campaign as

23

previously described of discriminating against Plaintiff on account of her race in violation of

N.J.S.A. 10:5-1, et seq. and the New Jersey Constitution, Art, 1, Para. V.

109. Defendant Kuhn's conduct in violation of the New Jersey Law Against

Discrimination includes:

    a)    Denying Plaintiff a renewal of her building permit;

    b)    Changing the requirements for Plaintiff's renewal of her building permit;

    c)    Submitting false and unsupported legal proceedings such as Notices of Violation, applications for search warrants and seeking an Order permitting the demolition of Plaintiff's home.

110. Mr. Kuhn admitted to Mr. Cook on August 25, 2022 that there never was a bona

fide safety concern sufficient to justify demolition at the Property, and therefore, the Township

and Mr. Kuhn acted unlawfully to force Plaintiff to sell and/or abandon the Property, not based

upon any legitimate safety concern.

111. As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will

continue to suffer, damages.

**COUNT VIII**
**LAW AGAINST DISCRIMINATION AGAINST DEFENDANT CHARLES CAHN**

112. Plaintiff repeats each and every allegation set forth above as if fully set forth herein

at length.

113. As described herein, and by continuing to issue notices of violation despite prior

issued Notifications of Abatement in June 2017, Defendants have conducted a campaign as

previously described of discriminating against Plaintiff on account of her race in violation of

N.J.S.A. 10:5-1, et seq. and the New Jersey Constitution, Art. 1, Para. V.

114. Defendant Cahn's conduct in violation of the New Jersey Law Against

Discrimination includes:

    a)    Directing Defendants Cattell and Kuhn to engage in the conduct described above;

24

b)      Harassing and directing the harassment of Plaintiff and the construction of her home by:

      i)      Making false representations of Plaintiff's character to her neighbors and contractors; and

      ii)      Conducting and/or ordering surveillance of Plaintiff, members of her family and contractors.

115.    As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

## COUNT IX
## 42 U.S.C. § 1983, SUBSTANTIVE DUE PROCESS—AGAINST ALL DEFENDANTS

116.    Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

117.    Plaintiff is a person protected by this statute, the United States Constitution, the New Jersey Constitution, and federal and state law.

118.    Plaintiff's rights include the right to use and enjoy property, both real and personal, including the Property, free from unlawful interference.

119.    Plaintiffs' rights also include property and development rights under the building permits, construction permits, and any related agreements or contracts.

120.    Defendants are "persons" as the term is used in 42 U.S.C. §1983.

121.    Defendants, at all times relevant thereto, were acting under the color of New Jersey State law in their capacities as employees, agents, officers, or representatives of the Township of Cherry Hill or the County of Camden, and their acts or omissions were conducted within the scope of their official duties or employment.

122.    The Defendants' conduct, including the Email Notice and demolishing the structure at the Property without any legal basis, constitute the Township of Cherry Hill's policy, custom, practice and/or the moving force behind the constitutional violations detailed herein.

25

123.    The actions of Defendants, collectively and individually, acting under color of law in carrying out the actions detailed above, and pursuant to municipal policy, custom, or practice, have deprived Plaintiff of her rights, privileges, and immunities secured by the Constitution or laws of the United States, including having deprived Plaintiff of her property rights without due process of law.

124.    Defendants' conduct lacked any legitimate purpose, were arbitrary, capricious, irrational, willful, improper, and unlawful, improperly motivated and conscience-shocking.

125.    Among other things, Defendants have taken actions unrelated to any legitimate governmental objective as part of an unlawful scheme directed at Plaintiff intended to block Plaintiff's use and enjoyment of the Property.

126.    In concocting the Email Notice, unlawfully demolishing the safe and unabandoned structure at the Property, and misusing governmental resources, the Defendants' conduct described above was intentional and was intended to injure and harass Plaintiff and obstruct her full use and enjoyment of her property rights for reasons that were unjustifiable by any legitimate government interest.

127.    Defendants' course of conduct in issuing prior purported violations, the Email Notice, and culminating in the recent demolition of the structure at the Property, was arbitrary and constitutes a gross abuse of government power.

128.    Mr. Kuhn admitted to Mr. Cook on August 25, 2022 that there never was a bona fide safety concern sufficient to justify demolition at the Property—the Township and Mr. Kuhn acted unlawfully to force Plaintiff to sell and/or abandon the Property, not based upon any legitimate safety concern. Defendants demolished the structure on the Property despite Defendant

26

Kuhn's admission to Mr. Cook on August 25, 2022 that demolition should proceed "not due to an imminent hazard."

129.   Defendants' conduct shocks the conscience.

130.   Defendants violated Plaintiff's clearly established rights under the Due Process Clause of which a reasonable person would have known.

131.   Defendants' violation of the Due Process Clause is the product of a longstanding practice or custom and/or at least one of Defendants' employees was acting as a final policymaker in violating the Due Process Clause.

132.   As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

**COUNT X**
**NEW JERSEY CIVIL RIGHTS ACT, N.J.S.A. 10:6-2(c), ARTICLE 1, PARAGRAPH 1 OF THE NEW JERSEY CONSTITUTION—AGAINST ALL DEFENDANTS**

133.   Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

134.   The New Jersey Constitution Article I, Paragraph 1, provides that "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."

135.   N.J.S.A. 10:6-2(c) provides that "[a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered

27

with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief. The penalty provided in subsection e. of this section shall be applicable to a violation of this subsection."

136. Plaintiff is a person protected by this statute, the United States Constitution, the New Jersey Constitution, and federal and state law.

137. Among Plaintiff's civil rights include the right not to be deprived of her property and the use and enjoyment of her property without due process of law, including the substantive due-process rights protected under the Fourteenth Amendment to the United States Constitution, as well as Article I, Paragraph 1 of the New Jersey Constitution, and federal and state law.

138. Plaintiff's rights include the right to use and enjoy her property, both real and personal, including her property and development rights under the building permits granted to Plaintiff, and any related approvals granted by the Township regarding the Property.

139. Plaintiff's rights also include the substantive right under Township Municipal Code Section 15-9.2, that all notices of violation must, among other things, include "a correction order allowing a reasonable time for repairs and improvements required to bring the dwelling unit, structure or premises into compliance with the provisions of this Code." All notices must also "state a specific time for compliance." The Email Notice violated Plaintiff's substantive rights because it did not contain either a correction order with time Plaintiff could cure alleged "violations," or a tabulation of penalties purportedly incurred.

140. Plaintiff's rights also include the substantive right under various state laws and regulations. For example, the Email Notice violated Plaintiff's substantive right and opportunity to correct purported violations, and same must be included in any such notice as provided by N.J.A.C. 5:23-2.30. N.J.A.C. 5:23-2.30(b)(2) states that "unless an immediate hazard to health

28

and safety is posed, the construction official shall permit such time period for correction as is reasonable within the context of the situation;" N.J.A.C. 5:23-2.30(b)(2). See also N.J.A.C. 5;23-2.30(a) (stating that code officer "shall issue a notice of violation and orders to terminate directing the discontinuance of the illegal action or condition and the correction of the violation").

141. Mr. Kuhn admitted to Mr. Cook on August 25, 2022 that there never was a bona fide safety concern sufficient to justify demolition at the Property—the Township and Mr. Kuhn acted unlawfully to force Plaintiff to sell and/or abandon the Property, not based upon any legitimate safety concern.

142. Defendants' conduct also violated N.J.S.A 52:27D-127(b).

143. The actions of all Defendants, collectively and individually, acting under color of law in carrying out the actions detailed above, and pursuant to municipal policy, custom, or practice, have deprived Plaintiff of her rights, privileges, and immunities secured by the Constitution or laws of the United States, including having deprived Plaintiff of her property rights without due process of law, lacked any legitimate reason, were arbitrary, capricious, irrational, willful, improper, and unlawful, improperly motivated and conscience-shocking.

144. The Defendants' conduct described above was intentional and was intended to injure and harass Plaintiff and obstruct Plaintiff's full enjoyment of her property rights for reasons that were unjustifiable by any legitimate government interest and shocks the conscience.

145. The Defendants' actions have deprived Plaintiff of a legally-permitted, economically and socially beneficial use of the Property.

146. The Defendants, by issuing the Email Notice have violated Plaintiff's rights under Article I of the New Jersey State Constitution.

29

147.    As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

## COUNT XI
## 42 U.S.C. §1983/1985(3) CONSPIRACY—AGAINST ALL DEFENDANTS

148.    Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

149.    Plaintiff is a person protected by this statute, the United States Constitution, the New Jersey Constitution, and federal and state law.

150.    Defendants are "persons" as the term is used in 42 U.S.C. §1983.

151.    Defendants, at all times relevant thereto, were acting under the color of New Jersey State law in their capacities as employees, agents, officers, or representatives of the Township of Cherry Hill or the County of Camden, and their acts or omissions were conducted within the scope of their official duties or employment.

152.    The acts of Defendants and other Defendants constitute a violation of 42 U.S.C. §§ 1983; 1983(5) and N.J.S.A. 10:6-1, et seq. and the New Jersey Constitution, namely a conspiracy to violate Plaintiff's civil rights.

153.    In furtherance of the conspiracy, Defendants consciously sought to target and the Property for demolition and harass Plaintiff despite knowing that Defendants had no objective basis to do so to force Plaintiff to sell the Property and leave the Township of Cherry Hill. For example, Defendants continued to issue violations to Plaintiff notwithstanding the fact that Defendants issued Notifications of Abatement in June 2017, which stated that Plaintiff "has conformed with the requirements" of the UCC "in terminating all violations as stated above."

154.    Mr. Kuhn admitted to Mr. Cook on August 25, 2022 that there never was a bona fide safety concern sufficient to justify demolition at the Property—the Township and Mr. Kuhn

acted unlawfully to force Plaintiff to sell and/or abandon the Property, not based upon any legitimate safety concern. Defendants demolished the structure on the Property despite Defendant Kuhn's admission to Mr. Cook on August 25, 2022 that demolition should proceed "not due to an imminent hazard."

155. In furtherance of the conspiracy, Defendants agreed and conspired to use Township resources and staff to intimidate and harass Plaintiffs as well as deprive her of their statutory and constitutional rights.

156. As part of the conspiracy to target Plaintiff and drive her out of the Township, Defendants unlawfully over assessed tax liability at the Property. For example, in 2022, although Defendants originally assessed improvements on the Property to be valued at $682,000, the Camden County Board of Taxation issued a Memorandum of Judgment revising the improvement value down more than half to $284,500.

157. Taken together, the Council's June and August 2022 Resolutions, the Email Notice, the improper tax assessment, and the Township's demolition of the structure at the Property, among other illegal acts by Defendants, constitute the Township of Cherry Hill's policy, custom, practice and/or the moving force behind the constitutional violations detailed herein.

158. As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

## COUNT XII
### 42 U.S.C. §1983 PROCEDURAL DUE PROCESS—AGAINST ALL DEFENDANTS

159. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

160. 42 U.S.C. §1983 provides, in relevant part,

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress […]

161.    Plaintiff is a person protected by this statute, the United States Constitution, the New Jersey Constitution, and federal and state law.

162.    Defendants are "persons" as the term is used in 42 U.S.C. §1983.

163.    Defendants, at all times relevant thereto, were acting under the color of New Jersey State law in their capacities as employees, agents, officers, or representatives of the Township of Cherry Hill or the County of Camden, and their acts or omissions were conducted within the scope of their official duties or employment.

164.    Plaintiff maintained federally protected property rights include the right to use and enjoy her property, both real and personal, including her property and development rights under the building permits granted to Plaintiff, and any related approvals granted by the Township regarding the Property.

165.    At the time of the events described herein, Plaintiff had a clearly established Constitutional right under the Fourteenth Amendment of the United States Constitution, and was entitled to due process, which requires that the procedures by which laws are applied must be evenhanded, so that individuals are not subjected to the arbitrary exercise of government power.

166.    N.J.S.A. 52:27D-131(d) and N.J.A.C. 5:23-2.16(f) purportedly authorized demolition of the structure at the Property without court permission or a neutral evidentiary hearing.

167. This authority, coupled with the Superior Court of New Jersey and New Jersey Appellate Division's refusal to review and/or prohibit Defendants from proceeding with demolition without a hearing, deprived Plaintiff of due process of law under the Fifth and Fourteenth Amendments to the United States Constitution.

168. Defendants' conduct, as described herein, was also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights.

169. None of the UCC statutory provisions or laws at issue expressly required the government to provide Plaintiff with a hearing or appropriate review of the Email Notice prior to demolition of the Property. In addition, none of the UCC statutory provisions or laws at issue here expressly offered Plaintiff the opportunity to cure any purported deficiencies or violations cited by the Defendants and used by them as a pretext to issue the Email Notice and ultimately demolish the structure.

170. As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

## COUNT XIII
## DECLARATORY JUDGMENT-DENIAL OF CONSTRUCTION PERMITS IS ARBITRARY AND CAPRICIOUS

171. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

172. In a letter dated July 7, 2022, Defendant Fredrick Kuhn denied all of Plaintiff's construction permits, including temporary permits for electrical work.

173. However, on August 25, 2022, Mr. Kuhn admitted to Mr. Cook that there never was a bona fide safety concern sufficient to justify demolition at the Property. Mr. Kuhn told Mr. Cook that demolition should proceed but "not due to an imminent hazard." The Township and Mr.

33

Kuhn acted unlawfully to force Plaintiff to sell and/or abandon the Property, not based upon any legitimate safety concern.

174.    Defendants' stated reasons were not valid grounds for denial of the permits. Some were nonsensical, some were baseless, while others were insignificant requiring ministerial corrections that did not warrant denial of the permits.

175.    The denial of Plaintiff's application for construction permits was arbitrary, capricious unreasonable and not supported by the record.

176.    Defendants' custom, practice, police and course of performance, including but not limited to the latest permit denials in 2022 and the subsequent unlawful demolition of the structure on the Property on January 26, 2023 represents a concerted effort to frustrate Plaintiff's attempts to complete her residence, and ultimately, constructively force her to sell the Property and not reside on Winding Drive in Cherry Hill.

177.    As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

**COUNT XIV**
**DECLARATORY JUDGMENT-THE EMAIL NOTICE VIOLATES STATE UCC REGULATORY SCHEME REQUIRING A PRIOR EVIDENTIARY HEARING**

178.    Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

179.    Subsection (d) of N.J.S.A. 52:27D-131 (Construction permits; application, approval, expiration, cancellation, extension) states:

> If the project for which the permit is obtained is not completed by a deadline set forth in this section, the permittee may submit a request for an extension of the permit to the enforcing agency for review.  The enforcing agency may extend the permit for a period of one year.  Approval of the extension shall not be unreasonably withheld. . . If a project is not completed within the deadline set forth in this section, the enforcing agency shall take

all appropriate action up to and including demolition of the uncompleted structure. [emphasis added].

180.     Subsection (c) dealing with revocation of permits states that "if a project is not completed by the third anniversary of the date of issuance of the construction permit, the enforcing agency may revoke or cancel the permit."

181.     In accord with the statute, N.J.A.C. 5:23-2.16(f) authorizes a construction official to exercise their discretion to revoke a permit or approval issued if "the project for which the permit was obtained is not completed by the third anniversary of the date of the issuance of the permit" and "if the project is not completed within the time allowed, the enforcing agency shall take such action under the code as may be appropriate, including without limitation, demolition of the structure, in which case the legal authority of the jurisdiction shall institute appropriate action against the owner of the property for recovery of the costs incurred."

182.     Neither the statute nor the regulations preclude an enforcing officer from issuing a new permit if work on a construction project is not completed within three years of issuance of the initial permit.

183.     The UCC statutory and regulatory structure contemplates written notices of violations of the code, with a reasonable time to correct (unless the violation creates an imminent hazard requiring an emergency order), and implicitly includes the right of an owner to obtain new permits to complete a project.

184.     The Township's Property Maintenance Regulations also make clear that "any person who has been issued a Notice of Violation under Sections 15-8 and 15-9 pf the Code and fails to comply with the Notice of Violation, may be issued a complaint by [the Township] charging a violation of this Code." §15-11 (Judicial Process).  Such complaint "shall" be filed with the Municipal Court of Cherry Hill or any other court of competent jurisdiction. Ibid.   See also

Township Ordinance §15-10.3 (Requiring "the Property Maintenance Inspector to ask the Township's legal representative to proceed at law or equity against the person responsible for the violation for the purpose of ordering that person" to "a. restrain, correct or remove the violation" or "c. require the removal of work in violation.").

185.    State regulations also require a municipality to proceed at law or equity against the person responsible for the code violation for the purpose of ordering that person to correct the violation under N.J.A.C. 5.23-2.31(a).

186.    The Township implicitly relied on this state regulation and its own regulation, Township Ordinance §15-10.3, when seeking relief from the court.

187.    As a result, state regulation and the Township's property maintenance regulations require the Township to institute a legal action to "restrain, correct, or abate" a properly noticed violation of the UCC; and thus require the provision of an evidentiary hearing to an owner prior to executing its order or direction to abate or demolish.

188.    As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

## COUNT XV
### DECLARATORY JUDGMENT-THE UCC REGULATORY SCHEME IS AN UNLAWFUL DELEGATION OF AUTHORITY

189.    Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

190.    In a letter dated July 7, 2022, the Township Code Officer denied Plaintiff's applications for construction permits for several insignificant or meritless reasons. The "Email Notice" also included a statement that a demolition order was attached. The Email Notice simply stated that it was issued because "Pursuant to N.J.A.C. 5:23-2.16(f) and N.J.S.A. 52:27D-131, the project was not completed by the deadline set forth in the NJ Uniform Construction Code."  The

letter makes clear that the Township has deemed demolition as the only remedy for the violation cited.

191.    On their face N.J.S.A. 52:27D-131 and N.J.A.C. 5:23-2.16(f) grant an enforcing agency unlimited discretion to take action it deems appropriate in the event that a construction project is not completed within three years of the time the permits were initially issued. See N.J.S.A. 52:27D-131 ("the enforcing agency shall take all appropriate action up to and including demolition of the uncompleted structure);  N.J.A.C. 5:23-2.16(f) (it shall "take such action under the code as may be appropriate, including without limitation, demolition of the structure.").

192.    Neither the statute nor the regulations provide legislative guidance or standards as to the conditions under which a municipality or enforcing agency may exercise the extreme remedy of demolition of a structure that has not been completed within 3 years of the issuance of the permits.

193.    N.J.S.A. 52:27D-131 and N.J.A.C. 5:23-2.16(f) grant a permissive power to a municipality or enforcing agency to demolish a building but fail to provide legislative guidance or standards as to when such power may be exercised as compared to lesser remedies. The unfettered discretion also permits an enforcing agency to impose penalties or require that applications for new permits be filed.

194.    As a result, the statute and the regulations on their face constitute an unconstitutional delegation of legislative authority in violation of the New Jersey Constitution and the due process clause of the 14th Amendment to the United States Constitution.  As such, N.J.S.A. §52:27D-131 and N.J.A.C. §5:23-2.16(f) are facially unconstitutional and invalid as breaches of the non-delegation doctrine.

195.   Plaintiff never abandoned the Property. Until Defendants unlawfully demolished the structure at the Property, she continued to apply for new construction permits, she secured the property with a fence, she protected the property from deterioration with a proper wrapping, she continued to pay property taxes, and she maintained the landscape free of debris and obstacles.

196.   The external structure was almost complete but for an external stucco covering and windows. Plaintiff expended enormous financial resources in addition to her time, emotional energy, and the use of durable materials (including a steel beam structure and internal woodwork).

197.   The Email Notice purports to exercise the unilateral power to destroy Plaintiff's home without recourse to administrative hearing or other form of appeal to a court. In addition to their facial invalidity for lack of legislative standards and guidance, N.J.S.A. 52:27D-131 and N.J.A.C. 5:23-2.16(f) are unconstitutional as they are applied by the Township of Cherry Hill in a manner that would result in demolition without hearing or notice of a right to a hearing.

198.   As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

**COUNT XVI**
**TRESPASS- AGAINST ALL DEFENDANTS**

199.   Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

200.   Defendants, including their agents and employees, intentionally and or recklessly entered onto the Property without legal basis and in violation of the Court's prior orders refusing to permit demolition of the structure at the Property.

201.   On the date of the demolition, Defendants and their agents cut the chain link fence that protected the Property. Defendants and their agents also surrounded Plaintiff's private security personnel and ordered them to leave without probable cause or reasonable basis.

38

202. Prior to the demolition, the Township police and the Defendants failed to provide Plaintiff with any demolition notice or legal justification to enter the Property.

203. Defendants also committed a continuing trespass through the continued prescience and placement of a demolition crew and equipment on the Property without legal basis and in violation of the Court's prior orders refusing to permit demolition of the structure at the Property.

204. As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

**COUNT XVII**
**TRESPASS TO LAND—AGAINST ALL DEFENDANTS**

205. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

206. Defendants, including their agents and employees, intentionally and or recklessly entered onto the Property without legal basis and in violation of the Court's prior orders refusing to permit demolition of the structure at the Property.

207. On the date of the demolition, Defendants and their agents cut the chain link fence that protected the Property. Defendants and their agents also surrounded Plaintiff's private security personnel and ordered them to leave without probable cause or reasonable basis.

208. Prior to the demolition, the Township police and the Defendants failed to provide Plaintiff with any demolition notice or legal justification to enter the Property.

209. Plaintiff is entitled to the difference between the value of the Property before the harm and the value after the harm, and/or the cost of restoration that has been or may be reasonably incurred.

210. As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

## COUNT XVIII
## FRAUDULENT CONCEALMENT—AGAINST ALL DEFENDANTS

211.    Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

212.    Defendants maintained a legal duty and obligation to maintain evidence—i.e. the structure at the Property—in connection with this pending litigation.

213.    The structure at the Property was material to this litigation, including but not limited to, for purposes of determining damages and Plaintiff's compliance with prior building permits and orders.

214.    Since Defendants demolished the structure, Plaintiff cannot reasonably obtain access to the structure (evidence) at the Property from another source.

215.    By trespassing onto the Property and proceeding with demolition in the middle of pending motions before the Court and without explicit Court authorization, Defendants intentionally withheld, altered, and destroyed the evidence with the purpose to disrupt the litigation.

216.    Plaintiff sustained damages, including but not limited to, now having to rely upon an evidential record that does not contain the structure at the Property (evidence) Defendants destroyed.

217.    As a result of Defendants' willful unlawful conduct, Plaintiff now cannot retain an expert to examine the structure at the Property, perform any tests on site, or conduct any related analysis as will be necessary in this action.

218.    As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

## COUNT XIX

40

**NEGLIGENCE—AGAINST ALL DEFENDANTS**

219.    Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

220.    Defendants owed duties to Plaintiff, including to not impede or destroy Plaintiff's property.

221.    By issuing unlawful demolition papers and ultimately demolishing the structure at the Property during the pendency of motions before the Court, Defendants breached said duties to Plaintiff.

222.    Defendants' conduct was the but for and proximate cause of Plaintiff's damages.

223.    As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

## COUNT XX
## 42 U.S.C. § 1983, UNLAWFUL SEIZURE OF PERSONS AND PROPERTY—AGAINST ALL DEFENDANTS

224.    Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

225.    Plaintiff is a person protected by this statute, the United States Constitution, the New Jersey Constitution, and federal and state law.

226.    At all relevant times, Defendants had personal involvement in the alleged wrongdoing, either through personal direction or of actual knowledge and acquiescence.

227.    Defendants are "persons" as the term is used in 42 U.S.C. §1983.

228.    Defendants, at all times relevant thereto, were acting under the color of New Jersey State law in their capacities as employees, agents, officers, or representatives of the Township of

Cherry Hill or the County of Camden, and their acts or omissions were conducted within the scope of their official duties or employment.

229. Warrantless searches and seizures are presumptively invalid.

230. Without a probable cause, a warrant, court order, or legal justification, Defendants trespassed on the Property and unreasonably seized the structure on site through their presence on the Property and subsequent demolition.

231. Without a probable cause, a warrant, court order, or legal justification, Defendants, including their employees and agents, seized Plaintiff and her private security team hired to protect the Property.

232. Prior to the demolition, the Township police and the Defendants failed to provide Plaintiff with any demolition notice or legal justification for the demolition.

233. As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, damages.

## COUNT XXI
### UNJUST ENRICHMENT—AGAINST ALL DEFENDANTS

234. Plaintiff repeats each and every allegation set forth above as if fully set forth herein at length.

235. Plaintiff provided substantial benefits to Defendants in the form of escrow monies required to build her home on the Property. Plaintiff paid approximately $13,260.00 for building, $1,611.00 for electrical, $1,735.00 for plumbing, $818.00 for fire protection, $1,537.00 for VolFee (DCA), $1,326.00 for CO Fee, $50 for engineering, and $3,586.00 for DOC Imaging.

236. At the time Plaintiff provided substantial value, she expected remuneration from Defendants, including the issuance of necessary permits, approvals, and other papers.

42

237. Defendants received and retained benefits—Plaintiff's escrow monies—without approving Plaintiff's building applications or returning said monies.

238. Defendants' retention of these benefits and escrow monies without an explanation or accounting would be unjust after Defendants demolished the structure at the Property.

239. As a result of Defendants' unlawful conduct, Plaintiff is entitled to repayment of $23,923.00 plus pre-judgment interest and costs she paid into the Defendants' escrow account.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A.   Declare the Email Notice to be substantively and constitutionally deficient;
B.   Declare that Defendants violated N.J.A.C. 5:23-2.16(f) and N.J.S.A. 52:27D-131 by and through their actions, or in the alternative, declare that N.J.A.C. 5:23-2.16(f) and N.J.S.A. 52:27D-131 are facially and as applied to Plaintiff unconstitutionally vague;
C.   Require Defendants to provide a complete accounting of all escrow funds Plaintiff paid and an itemization of monies allocated or lost;
D.   Award compensatory, consequential and incidental damages in an amount to be proved at trial;
E.   Award punitive damages;
F.   Award attorney's fees and costs pursuant to 42 U.S.C. §§ 1983, 1985 and 1988(b); and
G.   Provide such other relief as the Court deems just and equitable.


By: */s Corinne McCann Trainor*
         Corinne McCann Trainor, Esq.

Dated: February 27, 2023

**FOX ROTHSCHILD LLP**
**Formed in the Commonwealth of Pennsylvania**
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
Telephone: 609-844-3038
Facsimile: 609-896-1469
Email: ctrainor@foxrothschild.com

43

## JURY DEMAND

Plaintiff, Denise Williams, hereby demands a trial by jury as to all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:24-4, Corinne McCann Trainor, Esq., is hereby designated as trial counsel on behalf of Plaintiff.

By: */s Corinne McCann Trainor*
Corinne McCann Trainor, Esq.

Dated: February 27, 2023

**FOX ROTHSCHILD LLP**
**Formed in the Commonwealth of Pennsylvania**
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
Telephone: 609-844-3038
Facsimile: 609-896-1469
Email: ctrainor@foxrothschild.com

## CERTIFICATION

I hereby certify that pursuant to R. 4:5-1 that the consolidated matter in controversy in this action is not the subject of any other actions pending in any Court or of a pending arbitration proceeding and no other action or arbitration is contemplated, and no other parties must be joined in this action.

By: */s Corinne McCann Trainor*
Corinne McCann Trainor, Esq.

Dated: February 27, 2023

**FOX ROTHSCHILD LLP**
**Formed in the Commonwealth of Pennsylvania**
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
Telephone: 609-844-3038
Facsimile: 609-896-1469
Email: ctrainor@foxrothschild.com

## CERTIFICATION PURSUANT TO RULE 1:38-7

Pursuant to <u>R.</u> 1:38-7(b), I hereby certify that all confidential personal identifies, if any, have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

By: */s Corinne McCann Trainor*
Corinne McCann Trainor, Esq.

Dated:          February 27, 2023

**FOX ROTHSCHILD LLP**
**Formed in the Commonwealth of Pennsylvania**
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
Telephone: 609-844-3038
Facsimile: 609-896-1469
Email: ctrainor@foxrothschild.com